508

J. E. Candal & Company, demandante y recurrida, v. Lucas R. Rivera y Otros, y Alfredo Canino y Educational Enterprises, Inc., demandados y recurrentes los dos últimos.

*Número:* 301    *Resuelto:* 15 de noviembre de 1962

*Ángel Díaz García,* abogado de los recurrentes. *Luis Blanco Lugo* y *Jorge Souss,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Para el año 1956 y principios de 1957, Lucas R. Rivera y Rafael González Morales operaban una escuela bajo el nombre de "Modern Tabulating & Technology School", localizada en Hato Rey en un edificio arrendado a Alfredo E. Canino.

En noviembre 5 de 1956, Rivera y González suscribieron una serie de obligaciones a favor de Joaquín E. Candal para evidenciar un préstamo que éste les facilitó y cuyo importe fue utilizado para solventar unos plazos de una máquina de Rayos X utilizada para enseñar en la escuela y además en la adquisición de equipo y materiales escolares. El monto de estas obligaciones era de $5,600. En febrero de 1957 Candal vendió a Rivera y a González equipo y materiales para

la Modern Tabulating & Technology School mediante contrato de venta condicional. El importe de lo adeudado fue representado por doce obligaciones de $67.25 cada una, vencedera la primera en 7 de marzo de 1957 y las demás en igual día de los meses sucesivos.

En mayo de 1957, Alfredo E. Canino inició gestiones para adquirir la escuela Modern Tabulating & Technology School que operaba en un edificio de su propiedad en Hato Rey. Los dueños de la escuela le adeudaban a Canino $2,100 por concepto de cánones de arrendamiento, más $2,000 por concepto de un préstamo personal, o sea, una suma total de $4,100. En 26 de junio de 1957 se verificó finalmente la transacción, mediante el traspaso de la escuela con su equipo y mobiliario a la corporación "Educational Enterprise, Inc." Canino poseía 5/6 partes de las acciones de esta corporación y los otros dos accionistas eran su hija Lourdes M. Canino y su *compadre* el Ledo. Angel Díaz García. Para efectuar la transacción de compra de la escuela, Canino le cedió su acreencia de $4,100 a la corporación y dicha suma fue la que se hizo figurar como causa en el contrato de venta de la Modern Tabulating & Technology School.

En agosto del mismo año 1957, la corporación Educational Enterprise, Inc., vendió la referida escuela al señor L. Martiniano García por la suma de $15,000. No surge del récord que la dicha corporación realizara otros negocios que no fueran la compra de la escuela por los $4,100 que se le adeudaban a Canino, y su venta dos meses después al Sr. Martiniano García por $15,000.

En el año 1958, J. E. Candal demandó en cobro de dinero a Lucas R. Rivera y Rafael González Morales, haciendo negocios bajo el nombre de Modern Tabulating & Technology School y a Alfredo E. Canino y Educational Enterprise, Inc. En la primera causa de acción reclamó el importe de cuatro pagarés por una suma total de $4,100 más el importe de diez obligaciones por $67.25 cada una e intereses a razón del 9

por ciento anual.   Alegó que Canino y Educational Enterprise, Inc., habían asumido expresamente el pago de dichas obligaciones al adquirir el negocio de los demandados Rivera, y González que funcionaba bajo el nombre de Modern Tabulating & Technology School.   En una segunda causa de acción alegó en la alternativa que el traspaso de dicha escuela se hizo con el propósito de defraudar al demandante en el cobro de sus acreencias debido a la insolvencia de los deudores Rivera y González y que los codemandados Canino y Educational Enterprise, Inc. tenían conocimiento del crédito del demandante y otorgaron el contrato de referencia para burlar al demandante en el cobro de su dicho crédito.

Los demandados Rivera y González no contestaron y se les anotó su rebeldía.

Canino y Educational Enterprise, Inc. formularon conjuntamente su contestación.   Negaron casi todos los hechos de la demanda y afirmativamente alegaron que el contrato de venta de la escuela Modern Tabulating & Technology School otorgado por Rivera y González a favor de Educational Enterprise, Inc. fue una transacción legítima y que se hizo para satisfacer una deuda legítima a favor de la compradora.

Después de celebrarse un juicio en los méritos el Tribunal Superior dictó sentencia condenando a los demandados a pagar solidariamente al demandante las cantidades reclamadas en la demanda.   Además impuso las costas y $300 para honorarios de abogado a Canino y a Educational Enterprise, Inc.

En este recurso, Canino y Educational Enterprise, Inc. imputan al tribunal sentenciador los siguientes errores:

"1ro.—Cometió error al resolver que el demandado Alfredo E. Canino asumió las obligaciones de los otros demandados Lucas R. Rivera Vergelí y Rafael González Morales.

"2do.—Cometió error al condenar al pago de obligaciones con un tipo de interés usurario y en exceso por tanto del permitido por nuestras leyes.

"3ro.—El tribunal inferior cometió error al rasgar el velo corporativo de la demandada Educational Enterprise, Inc. y resolver que la corporación y la persona natural de Alfredo E. Canino se confundieron sin base alguna para ello." ▪

El primer error se dirige a atacar la apreciación de la prueba hecha por el tribunal a quo en cuanto si el demandado Canino asumió o no el pago de las deudas de la Modern Tabulating & Technology School. A ese respecto la prueba fue contradictoria pero el conflicto fue resuelto a favor del demandante. El estudio que hemos hecho del récord nos convence de que no se cometió el error imputado. Canino se hizo cargo de la escuela antes de que se formalizara por escrito el contrato de venta a favor de Educational Enterprise, Inc. Como cuestión de hecho cobró acreencias a favor de la escuela y pagó algunas de sus deudas. Canino se confrontó con el problema de que si la escuela no pagaba sus deudas, la Secretaría de Instrucción Pública le retiraría su aprobación, prohibiendo la matrícula de veteranos. Ante esa situación convino en satisfacer aquellas deudas de la institución que considerara legítimas. Esta determinación de hecho encuentra apoyo tanto en el testimonio del demandante Candal como en los de Antonio de Jesús, Director Auxiliar de la División de Educación para Veteranos del Departamento de Instrucción, el codemandado Rivera Vergelí y en el del propio Canino. No tenemos dudas de que éste, al hacerse cargo de la escuela, tenía conocimiento de la deuda a favor del demandante, ni tenemos dudas de que el negocio se hizo a base de que Canino se hiciera cargo del activo y el pasivo de la institución. Por lo demás, la prueba es terminante en cuanto a que el crédito del demandante era legítimo si por legítimo debemos asumir según inferimos lo entendía también Canino, aquellas sumas tomadas a préstamo o bajo contrato de venta condicional o a plazos, para usarse en el mantenimiento y operación de la Modern Tabulating & Technology School. El dinero adeudado a Candal se utilizó para ese fin, a saber: El pago de ciertos plazos vencidos de una máquina de Rayos X usada

para fines educativos y la compra de material y equipo para la escuela. Canino, pues, no puede escapar a su responsabilidad de satisfacer los créditos legítimos del demandante. ■■■

Lo que acabamos de resolver haría innecesario discutir el tercer señalamiento por el cual se impugna la determinación de rasgar el velo corporativo de la Educational Enterprise, Inc., e identificarla con el demandado Canino. Sin embargo, si consideramos las circunstancias peculiares de este caso, (1) especialmente los nexos que unen a sus accionistas, (2) número de acciones poseídas por Canino, forma en que se originó la transacción de compraventa, intervención de Canino en el negocio, realizando verdaderos actos de dueño del negocio antes del traspaso de la escuela a la corporación, etc., indican claramente que dicha corporación era el *alter ego* de Canino. (3) Resolver lo contrario en este caso sería permitir el uso del artificio corporativo para evadir el cumplimiento de obligaciones legítimas. Véanse *Sucn. Pérez* v. *Sucn. Gual*, 76 D.P.R. 959; *Cruz* v. *Ramírez*, 75 D.P.R. 947. No erró pues el tribunal sentenciador al rasgar el velo corporativo. ■

Por el segundo señalamiento sostiene el recurrente que la sentencia le condena a pagar obligaciones con un tipo de interés usurario. De la prueba resulta que Candal hizo un préstamo a Rivera y a González por la suma de $5,000 y que para evidenciarlo los deudores suscribieron en 5 de noviembre de 1956, cinco pagarés por la suma total de $5,600 pagaderos en el término de seis meses. La sentencia condenó a Canino a pagar cuatro de esas obligaciones más intereses a razón del

---

(1) La aplicación de la doctrina de rasgar el velo corporativo depende de las circunstancias peculiares de cada caso. *Automotriz del Golfo de California* v. *Resnick*, 306 P.2d 1.

(2) Los tribunales son muy cautelosos en sostener la entidad corporativa cuando se trata de casos en que todos los accionistas son miembros de una misma familia. *Fortugno* v. *Hudson Manure Co.*, 144 A.2d 207.

(3) *Shamrock Oil & Gas Co.* v. *Ethridge*, 159 F. Supp. 693.

514

9 por ciento desde la fecha de sus respectivos vencimientos. ([4])
Las cinco obligaciones incluían los intereses y éstos suman
$600. Una simple operación aritmética demuestra que los
intereses convenidos excedían el interés legal pues el capital
del préstamo era de solamente $5,000 y sin embargo los deudo-
res se obligaron a pagar $5,600 en el término de seis meses.
La transacción fue una sola que consistió en el préstamo de
$5,000. Los cinco pagarés suscritos por los prestatarios no
se negociaron separadamente. Por lo tanto un interés en
exceso del 8 por ciento resultaba en exceso del interés permi-
tido por la ley. 31 L.P.R.A. sec. 4591; *De Aldrey* v. *Regis-
trador*, 49 D.P.R. 56. Esto es así tanto en cuanto a los
intereses incluidos en las obligaciones como en cuanto a
aquéllos que a razón del 9 por ciento anual el tribunal sen-
tenciador incluyó en su sentencia.

La parte recurrida se enfrenta a este segundo señala-
miento de error con los siguientes argumentos:

"Resumiendo, en cuanto a este segundo error, a) no hay
prueba que sostenga inequívocamente que la suma de $600
sean por concepto de intereses; b) la defensa de usura es
tardía, ya que no se planteó en las alegaciones; c) aun cuando
pudiera entenderse que la prueba enmendó las alegaciones a
los fines de entenderse levantada la defensa usura, tal sería
improcedente, 1) en el caso de la 'corporación', por la prohibi-
ción expresa contenida en la Ley de Corporaciones y 2) en el
caso del demandado Canino, por no tratarse del deudor original
y basarse su reclamación en su promesa personal de asumir
las deudas." ▆

---

([4]) La sentencia detalla estas sumas en la siguiente forma:

"$750.00 e intereses a razón del 9 por ciento anual desde el 22 de
febrero de 1957.

"$1,050.00 e intereses a razón del 9 por ciento anual desde el 22 de
marzo de 1957.

"$1,150.00 e intereses a razón del 9 por ciento anual desde el 22 de
abril de 1957.

"$1,150.00 e intereses a razón del 9 por ciento anual desde el 22 de
mayo de 1957."

Contestaremos diciendo que (a) si algo demuestra la prueba es que el capital del préstamo montaba a $5,000, representados por cinco pagarés, cuya suma total es de $5,600 y que como se trataba de un préstamo y no de ningún otro negocio, los $600 en exceso de los $5,000, eran forzosamente intereses. El propio Candal declaró que el préstamo era por $5,000 y que en los pagarés estaban incluidos los intereses, (⁵) (b) que si bien la defensa de usura es una defensa afirmativa que debe ser levantada en la contestación —Regla 6.3 de Procedimiento Civil— nada impide que en un caso como el presente se considere levantada dicha defensa por la prueba presentada y en ese sentido, enmendadas las alegaciones; especialmente cuando

---

(⁵) Candal declaró:

"P.—Quiere decir que pagaban el 9 por ciento anual. "¿Por demora le pagaron intereses?

"R.—No, señor

"P.—Los intereses de ese préstamo aparece que se pagarían mensualmente...

"R.—Los intereses están incluidos en las obligaciones.

"P.—¿Cuánto fue el principal del préstamo?

"R.—Fue de cinco mil dólares ($5,000.00).

"P.—¿El principal cuánto fue?

"Demandante:

"Acaba de contestar que fueron cinco mil dólares.

"Demandado:

"Yo quiero que Ud. me diga cuál es el principal. Yo quisiera que el testigo me contestara...

"Testigo:

"Está todo incluido. Los cinco mil dólares fueron en total. Yo les presté a ellos cinco mil dólares para comprar equipo. Ahí está todo, más los intereses que están sin pagar.

"P.—¿Cuántos son esos intereses?

"R.—Si buscamos los documentos se verá...

"P.—¿Entonces, están los intereses vencidos?

"R.—Sí, señor

"P.—Antes de vencer los documentos estaban los intereses incluidos en la obligación?

"R.—Yo les presté cinco mil dólares y nada más.

"P.—¿Pero esos cinco mil dólares devengaban o no intereses?

"R.—Según aparece en los mismos documentos aparecen los cinco mil dólares.

"P.—Nada más." (T. E., págs. 46 y 47.)

se trata de un derecho cuya renuncia está prohibida por la ley. 31 L.P.R.A., sec. 4594. Y ya hemos visto que hubo prueba sobre el monto del préstamo y los intereses convenidos. El resultado de esa prueba es que los intereses convenidos exceden el tipo permitido por ley, (c) la defensa de usura procedía en este caso aun cuando el demandado no sea el prestatario original. Si bien es cierto, según alega el recurrido que este Tribunal había dejado expresamente sin resolver en dos ocasiones el punto de si la defensa de usura podía ser levantada por otra persona que no fuera la obligada originalmente —*Caraballo v. Registrador*, 48 D.P.R. 923 y *Rosario v. Ruiz*, 62 D.P.R. 326— posteriormente resolvió el punto en el caso de *Giráu v. González*, 73 D.P.R. 410, diciendo a la pág. 416 lo siguiente:

"Al argumentar el primer error el apelante admite que el contrato celebrado por él y Regino Rivera el 4 de febrero de 1946 violaba las disposiciones de la Ley de Usura, citada por el tribunal inferior, y que Rivera hubiera podido levantar con éxito la defensa de usura. Empero, sostiene que la apelada no puede alegar a su favor la nulidad de dicho contrato ya que la defensa de usura sólo puede ser planteada por el deudor original, y no por una tercera persona como lo es la apelada, quien al adquirir el inmueble en la forma en que lo hizo equivalió a una novación del contrato celebrado entre el apelante y Regino Rivera.

"Aceptando, sin resolverlo, que el contrato entre el apelante y la apelada constituyera una novación del contrato original celebrado entre el apelante y Rivera, ese hecho no impedía que la apelada planteara, como planteó, la defensa de usura, no obstante la disposición del artículo 1162 del Código Civil, ed. de 1930. Y esto es así porque, según indicamos en *Caraballo v. Registrador*, 48 D.P.R. 923; cf. *Rosario v. Ruiz*, 62 D.P.R. 326 y ahora resolvemos, ningún contrato que viola la Ley de Usura puede hacerse efectivo en una corte de Puerto Rico, por mandato de su sección 4, según enmendada en 1916, supra, disponiendo también la sección 4 que los derechos en ella definidos 'no son renunciables'. Por tanto, no empece la disposición del artículo 1162 del Código Civil, supra, si la causa de

nulidad en el contrato objeto de novación se debe a que el mismo infringe la Ley de Usura, el deudor no está impedido de invocar la nulidad de dicho contrato y de probarse, como probó en el presente caso, que el apelante, tanto en el contrato original celebrado con Rivera (y esto lo admite el apelante en su alegato) como en el que celebró con la apelada, estipuló y cobró intereses en exceso de los permitidos por ley, no erró el tribunal sentenciador al dar cumplimiento a las disposiciones de la Ley de Usura en la forma en que lo hizo en su sentencia." █

Respecto al alegado impedimento de la corporación para levantar la defensa de usura—14 L.P.R.A. sec. 2206—se olvida el recurrido de que en este caso se rasgó el velo corporativo y se identificó a la corporación con el demandado Canino; determinación ésta que benefició al demandante Candal. █

Aunque el préstamo usurario es un contrato con causa ilícita, el legislador ha formulado reglas especiales para regular sus efectos. Así el artículo 1652 del Código Civil —31 L.P.R.A. sec. 4594—dispone que un contrato de esta naturaleza no podrá hacerse efectivo en una corte de Puerto Rico, sino por el importe del capital adeudado, y la corte deberá, además, disponer en la sentencia condenando al deudor al pago del capital que el acreedor recobre solamente de su deudor el setenta y cinco por ciento de dicho capital y que el veinticinco por ciento restante sea adjudicado y recobrado por el Estado Libre Asociado de Puerto Rico. En su consecuencia, como el capital del préstamo era de $5,000 y de esa suma los deudores pagaron $1,500, el capital adeudado es de $3,500. De esta suma el demandante recurrido recobrará el 75 por ciento, o sea, $2,625 y el otro 25 por ciento, montante a $875, será adjudicado al Estado Libre Asociado de Puerto Rico.

*Se modificará la sentencia recurrida y así modificada será confirmada.*