MILL FACTORS CORPORATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, recurrido.

*Número:* O-68-56     *Resuelto:* 3 de junio de 1969

*González, Jr., González-Oliver & Novak* y *Eduardo Colón Castro,* abogados del recurrente; el Registrador recurrido compareció por escrito.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En 11 de octubre de 1967 la "International Yarn Corporation," una corporación doméstica con factoría en Carolina, Puerto Rico, suscribió un pagaré por $250,000.00 a favor de la recurrente, la "Mill Factors Corporation," una

corporación organizada en Delaware con oficina principal en Nueva York. La Mill Factors, como su nombre lo indica, se dedica a proveer financiamiento a empresas comerciales e industriales. El interés de la mencionada obligación se fijó al 1/30 del uno por ciento por día, equivalente al 12% anual. El tipo de interés se fijó a base de días siguiendo la costumbre en esa clase de transacciones entre compañías refaccionarias y firmas industriales.

En la misma fecha antes indicada la corporación deudora otorgó una hipoteca de bienes muebles en garantía del pagaré. La hipoteca fue presentada para inscripción en la Sección Cuarta de San Juan, con sede en Río Piedras, del Registro de la Propiedad de Puerto Rico. 30 L.P.R.A. secs. 1748 y 1740. El Registrador denegó la inscripción de la hipoteca e insertó al final del documento la siguiente nota:

"Denegada la inscripción al folio 263 del tomo 2HBM asiento 525, por observarse que los intereses a cobrarse en el contrato de hipoteca violan las disposiciones de la Ley de Usura y lo resuelto en el caso J. E. Candal versus Rivera, 86 DPR 508; deniega la inscripción solicitada tomando en su lugar anotación preventiva por 120 días a favor de la parte acreedora. San Juan a 31 de enero de 1968."

La recurrente hace los siguientes dos señalamientos de error: (1) Que el Registrador erró al interpretar las leyes de usura y de corporaciones, y (2) que se excedió en sus funciones al hacer caso omiso de la Ley de Corporaciones. El segundo señalamiento, según alegado y discutido por la recurrente, es un corolario del primero y de él depende. Los discutiremos conjuntamente.

Como puede apreciarse, el problema planteado es si puede el Registrador negarse a inscribir una hipoteca que garantiza una obligación asumida por una corporación por razón de que los intereses pactados excedan del ocho por ciento anual que establece la "Ley sobre fijación del interés en toda clase de obligaciones," de 1 de marzo de 1902, según enmendada,

incorporada al Código Civil como el Art. 1649; 31 L.P.R.A. sec. 4591.

La situación del caso de autos se parece a la que examinamos en *Borges* v. *Registrador*, 91 D.P.R. 112 (1964), en el sentido de que en este caso, igual que en aquél, el Estado mediante uno de sus órganos le dice al recurrente que puede hacer una cosa y mediante otro de sus órganos le dice que no. Nos explicamos a continuación.

La llamada Ley de Usura, que es la antes citada ley de 1902, dispone en su parte aquí pertinente que:

"[N]o podrá fijarse un tipo de interés, por convenio especial, que sea mayor de nueve (9) dólares anuales sobre cada cien (100) dólares o sobre su equivalente en valor, cuando el capital objeto del préstamo o del convenio no exceda de $3,000, y de ocho (8) dólares anuales por cada cien (100) dólares, cuando pase dicha cantidad. . . ."—31 L.P.R.A. sec. 4591.

El citado texto de la ley es claro y creemos que no necesita mayor elaboración. Las realidades y las necesidades económicas han llevado al legislador a hacer varias excepciones a la regla general de la Ley de 1902. Una de estas excepciones tiene por fin propiciar la disponibilidad de dinero a crédito para personas de escasos recursos que necesiten préstamos personales pequeños. Ésta es la "Ley de Préstamos Personales Pequeños," Ley Núm. 106 de 28 junio 1965; 10 L.P.R.A. secs. 941 y ss.[1]

Otras dos excepciones a la regla general sobre el interés máximo permitido por ley están dirigidas a atender el otro extremo del mercado de dinero. Una de éstas es la disposición de la Ley de Corporaciones aquí concernida. Se trata del Art. 1206 de la Ley de Corporaciones de Puerto Rico, Ley Núm. 3 de 9 de enero de 1956; 14 L.P.R.A. sec. 2206, el cual lee como sigue:

---

[1] Véase el Informe Conjunto de las Comisiones de Comercio e Industria, Hacienda y de lo Judicial, sobre el P. de la C. 319, que se convirtió en la citada Ley Núm. 106, en el *Diario de Sesiones*, Vol. 19, correspondiente al 22 de mayo de 1965, pág. 1661, especialmente la 1662.

"En un pleito entablado para exigir el pago de cualquier bono, pagaré u otro título de crédito emitido o asumido por la corporación, ésta no podrá alegar como defensa legislación alguna contra la usura."

■ Es el propósito de esa disposición abrir el mercado de dinero a las corporaciones domésticas para que éstas puedan conseguir financiamiento en iguales condiciones que sus competidoras las corporaciones foráneas. [2]

La otra excepción a la regla general de la Ley de 1902, dirigida también como la anterior a facilitar el crédito para fines industriales y comerciales, es la contenida en la Ley de Contratos de Refacción Industrial y Comercial, aplicable tanto a corporaciones como a personas naturales. Ley Núm. 86 de 24 de junio de 1954; 10 L.P.R.A. secs. 551 y ss. Dispone dicha ley en su Sec. 9 (10 L.P.R.A. sec. 559) lo siguiente:

"No obstante cualquier limitación o penalidad establecida por ley, cualquier persona natural o jurídica que tome a préstamo la suma de mil quinientos (1,500) dólares o más en una sola transacción para cualquier contrato de refacción industrial o comercial, de acuerdo con este Capítulo, podrá celebrar contratos, incurrir en obligaciones y tomar dinero a préstamo, bien en el Estado Libre Asociado de Puerto Rico o en cualquier otro sitio, a cualquier tipo de descuento por servicios que considere aceptable, y ningún deudor de esta clase podrá invocar estatuto alguno contra la usura. . . ."

---

[2] Cuando se discutía en la Cámara de Representantes el citado Art. 1206 de la vigente Ley de Corporaciones que dispone que las corporaciones no podrán alegar como defensa las leyes de usura, el Representante Sr. Arcilio Alvarado se expresó como sigue:

"Y no estamos aquí haciendo una Ley de Corporaciones sencillamente para que quede mejor teóricamente desde el punto de vista jurídico, no. Estamos haciendo un instrumento que queremos que sea un instrumento de creación. No es para ponernos al día con la legislación de los demás estados. Es para hacer un instrumento que desarrolle la inversión en el país y en empresas del país, de dinero del país; que ponga a funcionar mejor la maquinaria económica. Ese es el propósito fundamental de esta ley. Por eso es que la estamos haciendo principalmente."—*Diario de Sesiones*, Vol. 7, pág. 553 (1955).

También dispone dicha ley de refacción industrial y comercial que la misma "deberá interpretarse liberalmente con el fin de lograr la mayor efectividad de sus propósitos" y que el cumplimiento sustancial de sus disposiciones será suficiente para dar validez *a un gravamen* y jurisdicción a los tribunales de Puerto Rico para hacerlo efectivo. Sec. 10 de la ley; 10 L.P.R.A. sec. 560.

▓ La misma buena motivación del legislador—el fin social o bienestar general que las leyes persiguen—es la que justifica y fundamenta la regla general de la Ley de 1902 y las excepciones a dicha regla general para los muy pequeños y para los muy grandes, económicamente hablando, que constituyen las Leyes de Préstamos Personales Pequeños, la Ley de Corporaciones y la Ley de Contratos de Refacción Industrial y Comercial antes mencionadas. ([3])

El dilema que mencionamos antes en el cual se encuentra la recurrente es que mientras la Asamblea Legislativa le dice, en esencia, a través de la Ley de Corporaciones que éstas pueden tomar dinero a préstamo a un interés mayor del 9 por ciento, el Registro de la Propiedad, otro organismo público, mediante su interpretación en este caso de la legislación antes discutida, le dice que las corporaciones no pueden hacer tal cosa. Decimos que en esencia, o prácticamente, ésa es la situación pues la ley exime a las corporaciones de los términos de la Ley de 1902 y no puede pretenderse que quien presta un cuarto de millón de dólares lo haga sin pedir la mejor garantía posible, y ¿qué mejor garantía que la inscripción en el Registro de la Propiedad de la hipoteca que garantiza el pagaré? La facultad de inscribir la hipoteca es una facultad derivada y necesaria de la facultad de hacer la transacción de préstamo que la ley expresamente permite y autoriza. Lo contrario sería un contrasentido. No podemos

---

([3]) Para un aspecto distinto de esta cuestión, el de las ventas a plazos de artículos de consumo, véase *Monclova* v. *Financial Credit Corp.*, 83 D.P.R. 770 (1961).

384

presumir que la ley se propone lo absurdo. El Estado no puede permitir y prohibir a la vez un negocio jurídico.(4)

■ El Registrador aplicó erróneamente a la situación del caso de autos nuestra decisión en el caso de *J. E. Candal & Co.* v. *Rivera*, 86 D.P.R. 508 (1962). En los hechos dicha decisión es distinguible del caso que nos ocupa. En *Candal* el contrato estipulando intereses mayores que los permitidos por la Ley de 1902 fue celebrado entre personas naturales, de manera que los deudores podían alegar la defensa de usura. Allí el contrato nació ya viciado. En el caso de autos la deudora es una corporación la cual, en virtud de la Ley de Corporaciones, está exenta de la ley de usura. El contrato celebrado entre la Yarn Corporation y la Mill Factors es perfectamente lícito. Además, lo que resolvimos en *Candal* fue que Canino, persona natural, no podía "escapar a su responsabilidad de satisfacer los créditos legítimos del demandante." "Resolver lo contrario", dijimos allí, "sería permitir el uso del artificio corporativo para evadir el cumplimiento de obligaciones legítimas." En *Candal* rasgamos el velo corporativo para evitar esa iniquidad.

■ También resolvimos allí que habiéndose rasgado el velo corporativo la persona natural responsable podía oponer la defensa de usura. Desde luego, de no haberse rasgado el velo corporativo la corporación no podía oponer tal defensa y nada en ese caso resuelve lo contrario. En el caso de autos no hay nada que haga necesario, o que justifique, o que haga conveniente rasgar el velo corporativo. Ese asunto no está en controversia. Tampoco se trata de utilizar la ficción corporativa para evadir el cumplimiento de obligaciones legítimas. Por el contrario, se trata de inscribir una hipoteca de bienes muebles precisamente para garantizar obligaciones legítimas de la corporación deudora.

---

(4) V. Castán, *Derecho Civil Español, Común y Foral*, 9a. ed. (1955) Tomo 1, Vol. 2, págs. 497 y ss.

La jurisprudencia contemporánea sostiene la posición que aquí hemos adoptado. Precisamente porque hace más de un siglo en *Dry Dock Bank* v. *American Life Ins. & Trust Co.*, 3 N.Y. 344 (1850) se resolvió como aquí nos pide el Registrador que resolvamos, se legisló en Nueva York para impedir a las corporaciones levantar la defensa de usura. Las asambleas legislativas de muchos estados hicieron lo mismo. Generalmente los tribunales han entendido que esa legislación tiene el efecto de derogar las llamadas leyes de usura en lo que respecta a las corporaciones e interpretan liberalmente dicha excepción para permitir las transacciones financieras corporativas. *Curtis* v. *Leavitt*, 15 N.Y. 9 (1857); *The Vigilancia*, 73 Fed. 452 (1896); *Penrose* v. *Canton Nat. Bank*, 127 Atl. 852 (1925).

La jurisprudencia en este sentido es sumamente abundante y nada ganaríamos con copiarla aquí. Véase la misma en la anotación *"Statute denying defense of usury to corporation"* en 63 A.L.R.2d 924. V. también Katz, *"Usury Laws and the Corporate Exception,"* 23 Md. L. Rev. 51 (1962).

Nuestra decisión de hoy, desde luego, se refiere a casos de corporaciones *bona fide*. No tenemos ante nosotros una situación en que una persona natural se haya incorporado— o que se le haya exigido que se incorpore—con el fin de violar la ley de usura. Tal operación sería poco recomendable y riesgosa en extremo. Sobre el particular véase 63 A.L.R.2d a la págs. 954 y ss. Véanse también Harrell, *"Mortgage Investments and the Usury Problem,"* 10 Clev.-Mar. L. Rev. 343 (1961); Rivkind, *"Usury, Inc.—Incorporation to Avoid Usury Law,"* 7 Miami L.Q. 375 (1953); Nota, *"Corporations —Denial of the Defense of Usury Limited,"* 30 St. John's L. Rev. 126 (1955); Nota, *"The Corporate Device as a Cover for Usury,"* 24 Fordham L. Rev. 715 (1956). Como se sabe, los tribunales descorrerán el velo corporativo cuando la personalidad corporativa se utilice para derrotar la política

pública o violar la ley, *South P.R. Sugar Corp.* v. *Junta Azucarera*, 88 D.P.R. 43 (1963) y *J. E. Candal & Co.* v. *Rivera*, supra.

*Por los anteriores fundamentos se revocará la nota recurrida y se le ordenará al Registrador inscribir la hipoteca de bienes muebles objeto de este recurso.*