MANSIONES DE PARK GARDENS, INC., ETC., demandantes y recurrentes, *v.* SCOTIABANK DE PUERTO RICO, demandado y recurrido.

*Número:* R-83-228    *Resuelto:* 30 de junio de 1983

514

*Adrián Mercado*, de *Rúa & Mercado*, abogado de los recurrentes; *Alberto Picó*, de *Brown, Newsom & Córdova*, abogado de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Este caso plantea dos cuestiones: si la Ley Núm. 1 de 15 de octubre de 1973 (10 L.P.R.A. sec. 998 y ss.), que creó la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento derogó *sub silentio* la disposición de la Ley General de Corporaciones, Art. 1206 (14 L.P.R.A. sec. 2206), que impide a las corporaciones invocar estatuto alguno contra la usura; y si las personas naturales que garantizan préstamos hechos a corporaciones pueden utilizar la defensa de usura. Ambas cuestiones son noveles en esta jurisdicción. Se han suscitado en el contexto de hechos siguiente.

Mansiones de Park Gardens, Inc. y otras entidades jurídicas ("las corporaciones deudoras") efectuaron de 1979 en adelante contratos de préstamo con una antecesora en interés de Scotiabank de Puerto Rico ("el Banco") para el desarrollo de una urbanización. Como condición del préstamo el Banco les exigió documentos de garantía a diversas personas naturales ("los fiadores") y a la entidad Vinolo Corporation. Las obligaciones incurridas en tales documentos son de naturaleza solidaria.

Después de terminarse la construcción y venta de las casas, las corporaciones deudoras y los fiadores incoaron demanda para que el Tribunal Superior emitiese sentencia declaratoria al efecto de que los préstamos son usurarios. El Banco demandado solicitó sentencia sumaria parcial sobre las dos cuestiones antes descritas. El tribunal resolvió que el Art. 1206 de la Ley General de Corporaciones no ha sido modificado por la Ley Núm. 1 de 15 de octubre de 1973 y que los fiadores vienen obligados a pagar en su totalidad los intereses completos adeudados al Banco. Los demandantes —las corporaciones deudoras y los fiadores— han recurrido ante nosotros.

El Art. 1206 de la Ley General de Corporaciones disponía originalmente:

En un pleito entablado para exigir el pago de cualquier bono, pagaré u otro título de crédito emitido o asumido por la corporación, ésta no podrá alegar como defensa legislación alguna contra la usura.

Tiempo más tarde resolvimos el caso de *Mill Factors Corp.* v. *Registrador*, 97 D.P.R. 379 (1969). El Registrador de la Propiedad se negó en tal pleito a inscribir una hipoteca en garantía de un pagaré librado por una corporación, por estimar que los intereses a cobrarse violaban la Ley de Usura, Art. 1649 del Código Civil, 31 L.P.R.A. sec. 4591. Expresamos en *Mill Factors*, al ordenar la inscripción de la hipoteca, que el propósito del Art. 1206 fue ". . . abrir el mercado de dinero a las corporaciones domésticas para que

éstas puedan conseguir financiamiento en iguales condiciones que sus competidoras las corporaciones foráneas". Pág. 382.

*Mill Factors*, según se expresa en la Exposición de Motivos de la propia ley, causó la enmienda del referido Art. 1206 para aclarar aún más que las corporaciones prestatarias no pueden invocar estatuto alguno contra la usura, "[n]o obstante cualquier limitación o penalidad establecida por ley". Ley Núm. 102 de 5 de junio de 1973 (14 L.P.R.A. sec. 2206). Pocos meses después es que se aprueba la ley para crear la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento, Ley Núm. 1 de 15 de octubre de 1973 (10 L.P.R.A. sec. 998 y ss.).

Ni el texto ni el historial de esta ley apoyan la posición de las corporaciones deudoras recurrentes. El Art. 2 de la ley, 10 L.P.R.A. sec. 998a, expone:

> Se crea la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento . . . y se faculta a dicha Junta para fijar, regular, aumentar o disminuir, por reglamento y, durante el tiempo que ello fuere necesario, los tipos de interés y/o cargos máximos aplicables a determinadas transacciones económicas dentro del marco de cualesquiera sector, renglón o actividad económica del país, *no cubiertas por leyes especiales* . . . . (Énfasis nuestro.)

¿A qué "leyes especiales" se refiere lo anterior? *Mill Factors* menciona algunas: la Ley de Préstamos Personales Pequeños, Ley Núm. 106 de 28 de junio de 1965 (10 L.P.R.A. sec. 941 y ss.); la Ley de Contratos de Refacción Industrial y Comercial, Ley Núm. 86 de 24 de junio de 1954 (10 L.P.R.A. sec. 551 y ss.); y el Art. 1206 de la Ley General de Corporaciones, Ley Núm. 3 de 9 de enero de 1956 (14 L.P.R.A. sec. 2206).

El referido Art. 1206 acababa de ser enmendado pocos meses antes de la creación de la Junta. No hallamos base alguna para concluir, contrario al propio texto de la ley, que se quiso efectuar sigilosamente un cambio tan drástico

como el de sujetar las corporaciones regulares(¹) a la legislación sobre usura.

La interpretación administrativa y contemporánea de la Ley Núm. 1 de 15 de octubre de 1973 concuerda con lo expuesto. En su informe de 17 de octubre de ese año a la Asamblea Legislativa, al explicar el Reglamento de la misma fecha, la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento expresa el alcance de la frase "leyes especiales":

> De acuerdo con la ley, las determinaciones de la Junta no afectan los sectores y actividades cubiertos por otras leyes especiales. De hecho los sectores y actividades cubiertos por leyes especiales son mucho más que aquellos sobre los cuales la Junta tiene jurisdicción. Las leyes especiales cubren: (1) préstamos personales pequeños, (2) préstamos sobre prenda, (3) financiamiento de contratos de ventas al por menor a plazos y, (4) la Ley General de Corporaciones que excluye a dichas empresas de las disposiciones de la Ley de Usura. P. de la C. 676 (1973).

■   Resolvemos que la ley que creó la Junta Reguladora de Tasas de Interés y Cargos por Financiamiento no ha afectado la continuada vigencia del Art. 1206 de la Ley General de Corporaciones. Se ha señalado que los estatutos vigentes en este campo exigen revisión, mas ésta es tarea que le corresponde a la Asamblea Legislativa. J. Merriman y J. Hanks, Jr., *Revising State Usury Statutes in Light of a Tight Money Market*, 27 Md. L. Rev. 1 (1967); R. Vélez Colón, *El Problema de la Usura en Relación con el Financiamiento de Transacciones Comerciales*, 44 Rev. Der. Puertorriqueño 513 (1972).

Nos resta por determinar si los fiadores que son personas naturales pueden interponer en este caso, distinto a las corporaciones deudoras, la defensa de usura. Nuestra legis-

---

(¹) Las corporaciones cuyos accionistas no excedan de once, organizadas bajo el Art. 102(c) de la Ley General de Corporaciones, 14 L.P.R.A. sec. 1102(c), no están exentas, por disposición de ley, de los efectos de la legislación sobre usura.

lación sobre usura proviene de Estados Unidos. El Art. 1649 y ss. de nuestro Código Civil arranca de la Ley de 1 de marzo de 1902 (pág. 176 y ss.), tomada de fuentes norteamericanas. Nuestra Ley General de Corporaciones proviene principalmente de la legislación de Delaware, la cual ha servido de modelo a muchos otros estados.

██ La regla general en Estados Unidos, bajo estatutos similares al nuestro, es que los fiadores de una corporación no pueden invocar la defensa de usura. R. Lowell, *A Current Analysis of the Usury Laws—A National View*, 8 San Diego L. Rev. 193, 231 (1971); *Bank of Delaware* v. *NMD Realty Co.*, 325 A.2d 108 (1974); *Federal Deposit Ins. Corp.* v. *Julius Richman, Inc.*, 666 F.2d 780 (2nd Cir. 1981); Annot., *Usury—Defense by Corporation*, 63 A.L.R.2d 924, 950–953 (1959), 63 A.L.R.2d Later Case Service 341 (Supl. 1983). En ciertas jurisdicciones se distingue, sin embargo, entre quien firma en calidad de fiador y quien se obliga como codeudor. Los fiadores en este caso alegan, esencialmente, que por haber garantizado el pago de la deuda solidariamente se convirtieron en codeudores, con derecho a interponer la defensa de usura. En tales circunstancias este Tribunal ha tomado en consideración doctrinas de derecho civil.

En *Santini Fertilizer Co.* v. *Flores*, 40 D.P.R. 407 (1930), Gerardo y Ruperta Flores firmaron un pagaré a favor de Santini Fertilizer. Ruperta alegó haberlo suscrito como fiadora, porque los géneros comprados no eran para su beneficio ni para provecho de la sociedad de gananciales constituida por ella con el señor J.J. Marín. Rechazamos su argumento.

En *Galeno* v. *Abruña*, 40 D.P.R. 801 (1930), reiteramos que cuando una persona suscribe un pagaré solidario en unión a otra se constituye en deudor principal, no importa que el dinero prestado fuere para el uso exclusivo de una de las dos.

En *Carr* v. *Nones*, 98 D.P.R. 236 (1970), explicamos la distinción entre las tres figuras —la del deudor solidario, la del fiador y la del fiador solidario— aunque no dentro del contexto de la aplicabilidad de la legislación sobre usura. El deudor solidario es quien suscribe conjuntamente con otro un documento en el que los prestatarios se obligan solidariamente al pago de determinada cantidad. El hecho de que un deudor solidario no se beneficie personalmente del préstamo, como hemos visto, no lo convierte en un fiador. *Santini Fertilizer Co.*, supra; *Galeno*, supra; *Cintrón & Aboy* v. *Solá*, 22 D.P.R. 262 (1915); *National City Bank* v. *Llonín*, 41 D.P.R. 163 (1930). El fiador es quien se compromete a cumplir por un tercero, en caso de no hacerlo éste. Art. 1721 del Código Civil, 31 L.P.R.A. sec. 4871. El fiador solidario se obliga solidariamente a cumplir el compromiso contraído por el deudor principal, pero por ello el contrato de fianza no pierde su naturaleza propia ni se convierte en un contrato de préstamo. *Carr*, supra, pág. 240.

La figura del fiador solidario es conocida en el Derecho civil. J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. XII, págs. 264–265; J. Castán Tobeñas, *Derecho civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1977, T. 4, págs. 723–724; Q. M. Scaevola, *Código Civil*, Madrid, Inst. Ed. Reus, 1953, T. XXVIII, pág. 508; S. de 29 de diciembre de 1898, núm. 146, 85 Jurisprudencia Civil 666; S. de 21 de abril de 1931, núm. 123, 199 Jurisprudencia Civil 694.

Manresa, *op. cit.*, escribe sobre el particular:

Siendo, pues, distinta la situación en derecho, o dentro del orden jurídico, del deudor solidario y la del fiador que se obliga solidariamente con el deudor, diversas han de ser las consecuencias o los efectos de la obligación contraída por uno y otro; y así es, en efecto, pues el fiador en dicho caso, fuera de la responsabilidad que contrae de pagar la deuda antes de que se haya hecho excusión de bienes del principal obligado y sin necesidad de entablar reclamación alguna contra éste, conserva todos los demás derechos y todas las demás acciones

y beneficios que le corresponden por razón de la fianza, mientras que el codeudor principal no tiene otros derechos que aquellos que se le reconocen en la sección cuarta del capítulo III, título I del libro IV del Código . . . .

■ La distinción entre un codeudor y un fiador solidario se reconoce también en Estados Unidos. En casos específicos de alegada usura se ha resuelto que una persona natural que garantice solidariamente el pago de una deuda no puede invocar la defensa de usura cuando ésta no está disponible al deudor principal. *A. J. Armstrong Co.* v. *Lincoln Finance & Thrift, Inc. of Knox Co.*, 291 F.Supp. 1008 (1968); *Charmoll Fashions, Inc.* v. *Otto*, 248 N.W.2d 717 (1976).

■ El lenguaje de los documentos y las circunstancias que rodeen la transacción determinarán si se trata de codeudores o fiadores solidarios. En el caso de autos se emplea consistentemente el término "garantía" para describir la acción de las personas naturales envueltas. En un caso se otorgó un pagaré por algunos de los fiadores, mas no se ha argumentado, ni podría argumentarse dentro del contexto de las transacciones consumadas, que su ejecución respondió a un préstamo directo y no a una fianza solidaria.

En tales circunstancias estimamos que las mismas consideraciones que han motivado que las corporaciones no pueden invocar la defensa de usura apoyan la conclusión de que las personas naturales que sirvan de fiadoras, solidarias o no, tampoco pueden utilizar ese escudo. Los fiadores en tales situaciones asumen su responsabilidad como tales para facilitar usualmente transacciones mercantiles de cierta complejidad y monto. Pueden valerse del asesoramiento debido. No pertenecen generalmente al grupo de prestatarios individuales para quienes se diseñó la legislación sobre usura. Valga aclarar, no obstante, que no se expresa juicio por el Tribunal sobre las normas que deben regir cuando un prestamista exige en determinadas situaciones el uso de la forma corporativa como medio para evadir la legislación sobre usura. Véase: Comment, *Usury, Inc.—Incorporation*

*to Avoid Usury Laws*, 7 Miami L. Q. 375 (1953); Legislation, *Corporations—Denial of the Defense of Usury Limited*, 30 St. John's L. Rev. 126, 131 (1955); Legislation, *The Corporate Device as a Cover for Usury*, 24 Fordham L. Rev. 715 (1956).

Por las razones expuestas, *se expedirá el auto y se confirmará la sentencia parcial dictada.*

El Juez Asociado Señor Rebollo López disiente sin opinión.

