Brau Ramírez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
El apelante, Reinaldo Carreras Díaz, solicita la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 26 de junio de 1996, desestimando la demanda por incumplimiento de contrato y daños y perjuicios presentada por el apelante, su esposa Luz Minerva García Cardona y la sociedad legal de gananciales por ellos compuesta, contra la parte *745 apelada Horizontes del Este, Inc. ("Horizontes").
Confirmamos.
II
Según surge del expediente, Horizontes es una corporación organizada conforme a las leyes del Estado Libre Asociado de Puerto Rico con oficinas en Fajardo, Puerto Rico, y dedicada a la publicación del periódico El Horizonte.
El Horizonte es una periódico regional de circulación semanal cuya distribución gratuita cubre los municipios de Fajardo, Ceiba, Luquillo, Río Grande, Canóvanas, Loíza, Carolina, Vieques y Culebra. Para su subsistencia, el rotativo depende de la publicación de anuncios pautados por el comercio del área.
El apelante trabajó para Horizontes como contratista independiente desde el 20 de enero de 1989 hasta el 10 de diciembre de 1993.
Según se desprende del contrato por servicio de distribución suscrito por el apelante y Horizontes el 20 de enero de 1989, el apelante se obligó a distribuir el referido periódico según la ruta y manera señalada por Horizontes a cambio de una remuneración de cuatro (4) centavos por periódico repartido. La selección y contratación del personal necesario para realizar dicha tarea corría por cuenta del apelante.
El apelante contrataba muchachos a los cuales les pagaba por día de trabajo además de proveerle desayuno, almuerzo y comida. Al apelante se le entregaban los periódicos o éste los recogía en las facilidades del San Juan Star, encargado de la impresión del mismo. Los muchachos comenzaban a trabajar tan pronto se recibían los periódicos y no se detenían hasta completar la ruta.
Las rutas de distribución eran establecidas por Horizontes mediante la confección de unas tablas basadas en los censos poblacionales y los mapas de zonificación de la Junta de Planificación de Puerto Rico. De acuerdo con las tablas, a cada distribuidor se le entregaba determinada cantidad de periódicos. Se le instruía que, de ordinario, debían repartir una copia por residencia y tres por comercio. Además, se les señalaba la forma en que debía ser doblado el periódico antes de ser colocado en la rejas de las residencias y que el mismo no debía ser dejado dentro de los buzones del correo.
, De ordinario, la ruta asignada a cada distribuidor era alterada o variada según las necesidades del periódico. Los cambios obedecían factores tales como alguna promoción o "shopper" incluido en la tirada de determinada semana. Por tanto, la cantidad de periódicos a ser repartida también variaba.
Además del apelante, el periódico Horizontes utilizó los servicios de otras personas, las cuales en determinados momentos compartieron la distribución del periódico con éste, a saber, Antonio Martínez, John Cotto, Ink Advertising de Héctor Díaz, Víctor Ríos, Evelyn Santiago y sus hijos, William Soto, Luis González y Sixto Colón. Tal y como lo permitía el contrato, la ruta asignada al apelante fue cambiada en varias ocasiones.
En sus inicios, la labor del apelante fue satisfactoria. Sin embargo, luego comenzaron a detectarse deficiencias. En particular, comenzaron a recibirse quejas sobre la forma de distribuir los periódicos. En algunos casos, las personas se quejaban de que no les había llegado el periódico; en otros casos, se suscitaron quejas de que los paquetes de periódicos habían sido desechados en la propiedad de alguna persona. El apelante fue advertido de forma verbal y escrita sobre irregularidades en la distribución del periódico y se le solicitó que las corrigiera.
Las deficiencias eran notificadas o señaladas por los supervisores de ruta así como por el público. Algunas de dichas advertencias constan en los distintos memorandos que tanto el Sr. John Cotto, Director del periódico, como la Sra. Sandra Martínez Rosa, actual presidenta de Horizontes, le cursaron al apelante.
*746 Hubo un incidente en el cual una residente de Loíza Valley en Río Grande reportó que aproximadamente cuarenta periódicos habían sido dejados en el zafacón de su casa. La queja fue investigada y uno de los empleados del apelante, Josué Cruz Meléndez admitió haber echado deliberadamente los periódicos al zafacón. El apelante lo despidió.
Así las cosas, en octubre de 1992 Horizontes le comunicó al apelante que su ruta comprendería sólo los pueblos de Río Grande y Loíza. El apelante alegadamente le comunicó a la Sra. Martínez Rosa, que no estaba de acuerdo con el cambio pues significaba una reducción en la cantidad de periódicos a repartir y, por ende, en sus ganancias. Según alega el apelante, la Sra. Martínez Rosa le respondió que la decisión ya estaba tomada y que si no estaba de acuerdo la llevara a la corte.
El apelante acudió a un abogado, el cual le cursó una comunicación a Horizontes con el propósito de resolver el asunto extrajudicialmente. Supuestamente, el Sr. Cotto amenazó entonces al apelante con dar por terminado su contrato si éste no desistía de su reclamación judicial. En el ínterin el personal del San Juan Star, recibió instrucciones de que no se le entregara el periódico al apelante.
En noviembre de 1992, Horizontes cursó una comunicación al apelante en la que expresaba que dicha parte estaba en la disposición de que el apelante continuará distribuyendo el periódico, en una cantidad menor, hasta tanto demostrara que lo estaba haciendo de forma eficiente. El apelante distribuyó algunas otras publicaciones para la apelada.
No obstante, los problemas referentes a la distribución del periódico no cesaron y Horizontes continuaba cursándole advertencias al apelante y pidiéndole su corrección.
Finalmente, el 9 de diciembre de 1993, Horizontes notificó ai apelante que prescindiría de sus servicios, efectivo el día 10 de ese mes.
A raíz de la terminación de su contrato, el apelante, su esposa y la sociedad legal de gananciales por ellos compuesta, presentaron la presente acción ante el Tribunal de Primera Instancia, sobre incumplimiento de contrato y despido injustificado ante el Tribunal de Primera Instancia invocándo el procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961, 32 L P.R.A. secs. 3118 y ss.
La parte apelada contestó la reclamación negando la aplicación de la Ley Núm. 2, ya que de la propia querella surgía que el apelante había prestado servicios a Horizontes en calidad de contratista independiente. [1] El apelante modificó entonces su teoría para esbozar una reclamación bajo la Ley Núm. 75 de 24 de junio de 1964,10 L.P.R.A. sees. 278 y ss.
Luego de varios incidentes procesales, se celebró la vista en su fondo del caso los días 19 de abril de 1996 y 14 de junio de 1996.
Por la parte apelante testificaron el apelante Reinaldo Carreras Díaz, Josué Cruz Meléndez, Juan Carlos Rivera Benabe, Edwin O. Román Vega y Luz M. García Cardona.
El apelante testificó sobre los cambios de ruta que había sufrido y la reducción en su negocio que esto representaba. Declaró que él le explicaba a sus empleados cómo doblar y repartir el periódico conforme a las instrucciones recibidas de Horizontes. Admitió que dos de sus empleados habían tenido problemas con la justicia. Aceptó, además, que había despedido al joven Josué Cruz Meléndez por éste haber dejado varias copias del periódico en un solar baldío de la Urbanización Loíza Valley. Señaló que este incidente era aislado y que él no había actuado de forma negligente en la distribución del periódico. Expresó que en ocasiones los comerciantes se quejaban y exigían que le fueran dejadas más copias de las que Horizontes proveía. También testificó sobre los daños experimentados como consecuencia de la terminación de su contrato con Horizontes.
El joven Cruz Meléndez testificó que durante una época trabajó para el apelante repartiendo periódicos. Expresó que el apelante era exigente con ellos y que las jomadas de trabajo eran largas. Declaró que el apelante lo despidió inmediatamente por haber botado un paquete de periódicos en un solar yermo en la Urb. Loíza Valley.
*747 El joven Román Vega, quien fue empleado del apelante, testificó haber dejado de trabajar para éste porque debido a lo agotador del trabajo sus pies se le hinchaban. Admitió que él era negligente al dejar más periódicos de los permitidos por comercio.
El joven Rivera, quien también fue empleado del apelante relató el incidente concerniente a Josué Cruz Meléndez y señaló que el apelante además había despedido a un tal Eusebio por no hacer bien el trabajo.
La Sra. García Cardona testificó sobre los daños y angustias mentales sufridos por ella como consecuencia de la terminación del contrato entre su esposo y Horizontes.
Por su parte, la parte apelada presentó como testigos a Vicente Pierentoni, Inés Ramos Casanova, Ruth Bidot Baerga, Víctor Figueroa, Erick Carrera, Sandra Martínez y John Cotto.
El Sr. Pierentoni, para quien el apelante trabajó distribuyendo el periódico El Oriental declaró acerca de una investigación realizada por él en cuanto a una queja de que cerca de dos mil a tres mil ejemplares fueron hallados enterrados en el patio de la casa que el apelante compartía con su ex-esposa. El Sr. Pierentoni expresó que el apelante nunca admitió responsabilidad alguna por dicho incidente.
El Sr. Figueroa, quien se desempeñó como supervisor de distribución para Horizontes, manifestó que él había supervisado al apelante y que preparaba informes sobre la distribución los cuales entregaba a Horizontes. En sus informes señalaba problemas con la distribución y la necesidad de corregirlos. También relató un incidente en el cual fueron encontrados de cuarenta y cinco a cincuenta periódicos en la Urbanización Alturas de Río Grande, en la ruta del apelante.
La Sra. Ramos, residente de la Urb. Brisas del Mar en Luquillo, relató que en febrero de 1993 llamó al periódico para reportar que le habían dejado cerca de treinta y seis (36) copias del periódico en el zafacón de su casa.
La Sra. Bidot declaró haber preparado y estado presente cuando se le hacía entrega al apelado de los memorandos señalándole las deficiencias en la distribución del periódico.
El Sr. Erick Carrera, quien trabajó como distribuidor para Horizontes, aseveró que este tipo de contrato no le garantizaba al distribuidor la cantidad de periódicos a repartir.
La Sra. Martínez Rosa testificó sobre el incidente referente al joven Cruz Meléndez y a otro incidente similar ocurrido en Ceiba. Declaró sobre la forma en que el Sr. Cotto confeccionaba las tablas que los distribuidores utilizaban para repartir el periódico. Indicó que fueron muchas las quejas recibidas respecto a la distribución del periódico en las rutas cubiertas por el apelante. Admitió que, en muchas ocasiones, estas quejas eran verbales.
El 26 de junio de 1997 el Tribunal dictó la sentencia apelada, desestimando la demanda de epígrafe. Concluyó que el apelante no era un distribuidor al amparo de la Ley Núm. 75 de 24 de junio de 1964. El Tribunal determinó, además, que el apelante había incumplido el contrato suscrito con Horizontes "al distribuir el periódico El Horizonte de manera negligente, al no supervisar adecuadamente a sus empleados y al no tomar medidas correctivas para mejorar la distribución no empece las advertencias que la demandada le dio. La situación creada por el apelante puso en riesgo el buen nombre comercial de la demandada y ésta estaba justificada en rescindir el contrato suscrito con el demandante."
El apelante presentó una moción de determinaciones de hechos adicionales, la cual fue denegada por un Magistrado diferente, habiendo sido trasladado a otra plaza el Juez que había emitido la sentencia.
Inconforme, el apelante acudió a este Tribunal.
*748 ni
En su recurso, el apelante señala que erró el Tribunal al resolver que él no es un distribuidor bajo la Ley Núm. 75 de 24 de junio de 1964, 10 L.P.R.A. sees. 278 y ss., al desestimar la demanda y al declarar no ha lugar a la solicitud de determinación de hechos adicionales.
La citada Ley Núm. 75 tiene como propósito remediar la situación de los distribuidores afectados por las actuaciones de los principales quienes sin justa causa daban por terminadas las relaciones contractuales una vez el distribuidor había establecido un mercado favorable para el producto o servicio. Véanse, Sistema de P.R Inc. v Interface Int'l, 123 D.P.R. 379, 386 (1989); San Juan Merc. v. Canadian Transport Co . 108 D.P R 211, 216 (1978); Walborg Corp. v. Tribunal Superior, 104 D.P.R. 184, 189 (1975); Warner Lambert Co v. Tribunal Superior, 101 D.P.R. 378, 398 (1973); véase, además, la exposición de motivos de la Ley, Leyes de Puerto Rico, a la pág. 242 (1964).
Para resolver esta situación, la Ley estableció una causa de acción a favor del distribuidor por la terminación sin justa causa o menoscabo del contrato de distribución por el principal. 10 L.P.R.A. sec. 278a; Borg Warner International Corp. v. Quasar Company a Division of Matsushita Electric Corp. of America, _ D.P.R. _ (1995), 95 J.T.S. 30, a la pág. 714; Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. a la pág. 400; Marina Ind., Inc. v Brown Boveri Corp., 114 D.P.R. 64, 77 (1983).
Esta conducta del principal se considera un acto torticero, dando lugar a la compensación de daños por las partidas establecidas en el art. ,3 de la Ley, 10 L.P.R.A. sec. 278b.
La Ley Núm. 75 define el término "distribuidor" como aquella "persona realmente interesada en un contrato de distribución por tener efectivamente a su cargo en Puerto Rico la distribución, agencia, concesión o representación de determinada mercancía o servicio." 10 L.P.R.A. sec. 278.
Por su parte, "el contrato de distribución" aparece definido como la "relación establecida entre un distribuidor y un principal o concedente, mediante la cual, e irrespectivamente de la forma en que las partes denominen, caractericen o formalicen dicha relación, el primero se hace real y efectivamente cargo de la distribución de una mercancía, o de la prestación de un servicio mediante concesión o franquicia, en el mercado de Puerto Rico." 10 L.P.R.A. see. 278.
El Tribunal Supremo de Puerto Rico ha observado que estas definiciones resultan esquemáticas y poco precisas por lo cual los tribunales han tenido que delimitar su contenido conforme a los fines que persigue el estatuto. Roberco, Inc. v. Colón y Oxford Inds., Inc., 122 D.P.R. 115, 124 (1988).
El Tribunal ha sugerido que para determinar si una parte es distribuidor bajo la Ley Núm. 75 se deben considerar, sin exclusión de otros, los siguientes factores: 1) si el distribuidor realiza una actividad, promoción, y/o conclusión de contratos; 2) si adquiere inventario; (3) si ejerce control sobre los precios; 4) si tiene discreción en cuanto a pactar los términos de las ventas; 5) si tiene responsabilidad por la entrega y el cobro de la mercancía y autoridad para conceder crédito; 6) si lleva a cabo gestiones independientes o conjuntas de publicidad; 7) si ha asumido el riesgo y la responsabilidad en la gestión que realiza; 8) si compra el producto; 9) si tiene facilidades físicas y ofrece servicios relacionados con el producto a sus clientes. Cobos Liccia v. DeJean Packing Co., Inc., 124 D.P.R. 896, 907 (1989); Roberco, Inc. v. Colón y Oxford Inds. Inc., 122 D.P.R. a la pág. 131; Medina & Medina v. Country Pride Foods, 122 D.P.R. 172, 188 (1988) a la pág. 188.
En distintas ocasiones, el Tribunal ha aclarado que la Ley no impone exclusividad en la relación de distribución, aunque las partes así pueden pactarlo. J. Soler Motors v. Kaiser Jees Int'l, 108 D.P.R. 134 (1978). Además, que le son de aplicación las disposiciones del Código de Comercio relativas a la interrupción de la prescripción, Pacheco v. Nat'l Western Life Ins. Co., 122 D.P.R. 55, 67 (1988), y que el principal o concedente en caso de retirarse del mercado puede dar por terminada la relación contractual, si lo notifica al distribuidor dentro de un término razonable acorde con la relación existente entre ellos. Medina & Medina v. Country Pride Foods, 122 D.P.R. a las págs. 191-192.
En la situación de autos, el apelante alega que su relación contractual con Horizontes constituia un contrato de distribución, dentro del contexto de la Ley Núm. 75, y que la parte apelada terminó el mismo sin justa causa, en contravención con dicho estatuto. Sostiene que Horizontes no tenía motivos *749 ni justificación para dar por terminado el contrato, por lo que la terminación del mismo constituyó una violación de lo pactado.
El apelante insiste que, contrario a lo alegado por Horizontes, él no actuó de forma negligente al repartir el periódico y que corrigió todos los señalamientos que le fueron hechos, por lo cual Horizontes no tenía razón alguna para resolver el contrato.
El Tribunal de Primera Instancia, sin embargo, determinó que el apelante no era un distribuidor cubierto por la Ley y que la terminación de su contrato estaba justificada por su desempeño deficiente en la tarea de la repartición de los periódicos que había pactado con Horizontes.
Es norma establecida que, de ordinario, los foros apelativos no intervendrán con las determinaciones de hechos y la adjudicación de credibilidad hecha por los tribunales de primera instancia, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Méndez de Rodríguez v. Morales Molina, _ D.P.R. _ (1996), 96 J.T.S. 149, a la pág. 347; Cándido Oliveras, Inc. v. Universal Insurance Company, _ D.P.R. _ (1996), 96 J.T.S. 145, a la pág 298; Pérez Marrero v. Colegio de Cirujanos Dentistas, _ D.P R. _ (1992), 92 J.T.S. 124, a la pág. 9,943; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2.
De la prueba desfilada no surgen elementos que nos lleven a concluir que el Tribunal errara en su determinación de que el apelante no es un distribuidor, según definido por la ley y la jurisprudencia o que nos movieran a sustituir la evaluación de la prueba realizada por el tribunal a quo, quien contó con una oportunidad superior a la nuestra para confrontar la evidencia. Véase, Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985).
Bajo el contrato suscrito por el apelante y Horizontes el apelante se limitaba a recoger los periódicos y repartirlos. El apelante no hacía inversión alguna en mercancía, ni mantenía inventario o almacén. El apelante no intervenía ni en la promoción ni el desarrollo de mercado para el rotativo, no incurría en gastos de publicidad. Sus gestiones se limitaban a prestar servicio de repartición de periódicos en una ruta preestablecida.
Tratándose de una obligación sin término fijo, no cubierta bajo la Ley Núm. 75, Horizontes tenía derecho a terminar la misma a su voluntad. Arecibo Motors Co. v. Caribe Motors Corp., 60 D.P.R 401, 409 (1942).
En cualquier caso, el Tribunal de Primera Instancia determinó que el apelante había incumplido sus obligaciones bajo el acuerdo, lo que similarmente autorizaba a Horizontes a resolver el contrato, conforme a lo dispuesto por el art. 1077 del Código Civil, 31 L P.R A. sec. 3052. Véase, Flores v. Municipio de Caguas, 114 D.P.R. 513, 529 (1983).
El apelante también se queja de que la moción de determinación de hechos adicionales presentada por él fue denegada por un juez distinto al que celebró la vista en su fondo. El apelante no expone, sin embargo, que esto le hubiera ocasionado perjuicio específico alguno. Lo cierto es que este foro contó con una transcripción adecuada de la prueba oral desfilada en la vista en su fondo, además de la documental que consta en el expediente, y que pudimos constatar que las determinaciones del Tribunal están sostenidas por la prueba.
Por los fundamentos expresados, se confirma la sentencia apelada.
Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 98 DTA 19
1. Este hecho fue posteriormente estipulado por las partes en el informe sobre conferencia preliminar entre abogados.