RAMÓN AVILÉS VEGA y BASILISA ARES DE AVILÉS, demandantes y recurrentes, *v.* RICARDO TORRES DÁVILA, EUGENIA, conocida por GEÑITA, GARCÍA y VENTURA MANAUTOU, demandados y recurridos.

*Número:* R-66-28    *Resuelto:* 1ro. de abril de 1969

*Efraín Aponte Berdecía* y *Antonio Aponte Berdecía,* abogados de los recurrentes; *Gregorio Lacot Salgado* y *Pedro Juan Alcalá,* abogados de los recurridos.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

PER CURIAM: Mediante la presente acción se ataca el procedimiento de ejecución llevado a cabo en otro pleito en el cual el aquí demandante-recurrente fue demandado por daños y perjuicios causados en un accidente automovilístico.

La vista del mencionado pleito de daños y perjuicios se celebró en el Tribunal de Distrito, Sala de Río Piedras. Dicho tribunal declaró con lugar la demanda contra los demandados

Ramón Avilés Vega y esposa y les condenó a pagar al demandante Ventura Manautou la suma de $920.00 por concepto de daños y perjuicios, con imposición de costas y la suma de $100.00 por concepto de honorarios de abogado.

De dicha sentencia los demandados apelaron para ante el Tribunal Superior, Sala de San Juan. El Tribunal Superior confirmó y devolvió el caso a la Sala de origen para la ejecución de la sentencia.

Mientras se tramitaba el caso en el Tribunal de Distrito, previa moción al efecto, dicho tribunal ordenó la anotación del embargo preventivo de una casa con solar propiedad de los demandados sita en la Urbanización Caparra Terrace, Río Piedras, Puerto Rico. Luego de haber sido confirmado por el Tribunal Superior, el Tribunal de Distrito, previa moción al efecto, ordenó la ejecución de la sentencia. En consecuencia, se ordenó al alguacil a embargar en ejecución de sentencia "bienes de la propiedad de los demandados los cuales deberá proceder a vender en pública subasta al mejor postor en cantidad suficiente para cubrir la cantidad mencionada de $920.00 de principal, $100.00 para honorarios de abogado, con más [sic] $10.00 para gastos y costas del procedimiento y en caso de que se embarguen bienes muebles los deposite en poder de un depositario designado por (el alguacil) con tal fin."

Amparado por la orden de embargo y por el mandamiento dirigido al alguacil, el demandante mediante un Acuse de Bienes requirió del alguacil del Tribunal de Distrito que embargase y vendiese en pública subasta la casa con solar de los demandados sita en la Urbanización Caparra Terrace antes mencionada.

La subasta se celebró el 5 de diciembre de 1963, adjudicándose la buena pro de la misma a Ricardo Torres por la suma de $1,118.74. Ricardo Torres y esposa y Ventura Manautou son los demandados-recurridos en este recurso.

Manautou era el demandante en el pleito original por daños y perjuicios.

Veinticinco días después de celebrada la subasta, en 30 de diciembre de 1963, los demandados y embargados en el pleito de daños y perjuicios presentaron una moción solicitando la nulidad de la ejecución de la sentencia. En apoyo de la misma alegaron que en relación con la subasta no se observaron los requisitos que la ley exige y alegaron además que la única propiedad que poseían los demandados y sobre la cual tenían constituido su derecho de hogar seguro, que por ley está valorado en $1,500.00, es la residencia que fue subastada. Alegaron también que dicha suma debió ser depositada en el tribunal, lo cual no se hizo. En dicha moción los demandados solicitaron una vista para la discusión de la misma. El Tribunal de Distrito declaró sin lugar dicha moción.

En 14 de enero de 1964 los demandantes-recurrentes Ramón Avilés y esposa (que fueron los demandados en el pleito de daños y perjuicios) presentaron en el Tribunal Superior, Sala de San Juan, la acción objeto del presente recurso, alegando la nulidad de la ejecución y de la subasta. Dicha acción fue declarada sin lugar por el Tribunal Superior. Ante nos los esposos recurrentes señalan cuatro errores, los cuales mencionaremos y discutiremos a continuación.

■ El primer señalamiento es al efecto de que erró el tribunal al concluir que la ley no requiere que una orden de ejecución y el mandato sean notificados a la parte contra la cual se dictó sentencia. Entiende el recurrente que la Regla 65.3 de Procedimiento Civil requiere que el Secretario notifique las órdenes de ejecución y los mandamientos de embargo. (¹) No tiene razón.

Aunque la Regla 65.3 dispone que después de archivarse en autos copia de una orden o sentencia el Secretario dará

---

(¹) Nos remitimos, desde luego, en el curso de esta opinión a las Reglas de Procedimiento Civil de 1958 según enmendadas, excepto cuando se indica lo contrario.

aviso por correo de tal archivo en la forma preceptuada por la Regla 67 a todas las partes, dicha Regla hay que leerla conjuntamente con la Número 67.1 la cual dispone sobre la notificación a las partes. Preceptúa dicha Regla que se notificará toda orden "que de acuerdo con sus términos deba ser notificada." La orden de ejecución no es una que deba ser notificada, por cuanto hacerlo sería supérfluo a tenor con lo provisto por la Regla 51 que dispone sobre la ejecución. En lo pertinente, la Regla 51.1 dispone que:

"La parte a cuyo favor se dicte sentencia, podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de 5 años de ser firme la misma. Expirado dicho término, podrá ejecutarse la sentencia mediante autorización del tribunal a moción de parte y previa notificación a todas las partes."

Y la Regla 51.2 dispone, en parte que: "El procedimiento para ejecutar una sentencia u orden para el pago de una suma de dinero y para recobrar las costas concedidas en una sentencia u orden, será mediante mandamiento de ejecución."

Como puede observarse, durante los primeros cinco años el procedimiento de ejecución se inicia mediante mandamiento de ejecución. Es después de transcurridos los primeros cinco años que se requiere moción, notificación a todas las partes y orden del tribunal para ejecutar la sentencia. En cuanto a la forma de obtener el mandamiento de ejecución, la Regla 65.2 dispone, en lo pertinente, lo siguiente:

"Todas las mociones y solicitudes presentadas en la secretaría del tribunal para la expedición de mandamientos . . . serán concedidas usualmente por el secretario; pero la actuación de éste podrá, por causa justificada ser suspendida, alterada o dejada sin efecto por el tribunal."

Interpretando disposiciones similares a las que aquí discutimos, en *Lawton v. Porto Rico Fruit Exchange*, 42 D.P.R. 291, 300 (1931), dijimos lo siguiente:

"Además, si bien para embargar bienes como aseguramiento de sentencia es necesaria una orden de la corte, no lo es para que una sentencia puede ser cumplida, pues en ninguno de los artículos 232 al 268 del Código de Enjuiciamiento Civil que tratan de la ejecución de las sentencias se requiere orden de la corte, con excepción de lo dispuesto en el artículo 243 para cuando han pasado cinco años sin ser ejecutada, si no se trata de cobro de dinero. Si en tal caso se necesita orden de la corte es porque antes de los cinco años no se necesita ninguna, siendo, por tanto, deber ministerial del secretario, en el caso no comprendido en el artículo 243, librar la orden para ejecución de la sentencia. El secretario puede librar mandamiento de ejecución sin previa orden de la corte. [Cita omitida.] La expedición del mandamiento de ejecución es un acto ministerial del secretario. [Citas omitidas.] Por consiguiente, la orden de la corte mandando a cumplir la sentencia por el márshal de su corte puede considerarse superflua; . . . ."

Continuó razonando el Tribunal en *Lawton* que como existía una sentencia condenatoria de pago el Secretario estuvo autorizado para librar el mandamiento de ejecución al alguacil. Si la orden del tribunal mandando a cumplir la sentencia es superflua, razonamos nosotros ahora, también lo es la notificación de la misma.

En cuanto al mandamiento de ejecución nada encontramos en las Reglas vigentes, ni en las disposiciones del Código de Enjuiciamiento Civil vigentes o derogadas, ni en las del Código de California de las cuales estas últimas proceden, ni en la jurisprudencia interpretativa de unas y otras, que requiera que dicho mandamiento sea previamente notificado al deudor por sentencia.

Creemos improbable que lo contrario sea la intención de las Reglas—o antes, del Código—pues tal notificación tendría el efecto de prevenir al deudor dándole la oportunidad para esconder o transferir propiedades y frustrar así el propósito del mandato de ejecución. Tal notificación sólo es requerida si han transcurrido más de cinco años desde que la sentencia se convirtió en firme. Regla 51.1. Sobre el motivo por el cual

se requiere notificación y orden del tribunal después de los cinco años, hicimos una expresión en *Banco Territorial y Agrícola* v. *Marcial,* 44 D.P.R. 129, 132 (1932).

En el segundo señalamiento se alega que en la publicación de los edictos no se cumplió con los requisitos de ley en cuanto al tiempo de publicación. Tampoco es correcto este segundo planteamiento.

Sobre la ejecución de las sentencias están en vigor, entre otros, los Arts. 251 al 258 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 1132 a 1139. Dispone el Art. 251 de dicho Código, 32 L.P.R.A. sec. 1132, que antes de verificarse la venta de los bienes objeto de la ejecución deberá publicarse en un periódico un aviso de venta una vez por semana por espacio de veinte días.[2] Interpretando dicho Art. 251, en *Rivera* v. *Registrador,* 32 D.P.R. 934 (1925), dijimos a la pág. 936:

"Nuestra conclusión es que habiéndose publicado el edicto una vez por semana, durante tres semanas consecutivas, y habiendo transcurrido más de veinte días entre la fecha de la publicación del primer edicto que lo fue el 3 de octubre y la de la subasta que se fijó para y tuvo lugar el 27 de octubre, se ha cumplido con el estatuto."

Estos requisitos fueron cumplidos en el caso de autos. Los edictos se publicaron en los días 11, 18 y 29 de noviembre y la subasta se celebró el día 5 del mes siguiente. Se publicaron una vez por semana, durante tres semanas consecutivas y transcurrieron 24 días entre la primera publicación y la subasta.

Abundando en lo anterior, en *Ramírez* v. *Rivera,* 48 D.P.R. 967 (1935), caso en que se ejecutó una casa en cumplimiento

---

[2] Aunque dicho artículo habla de propiedad personal una ley de 9 de marzo de 1905, 32 L.P.R.A. sec. 1146, dispuso que la propiedad inmueble embargada en virtud de cualquier orden de ejecución será vendida en pública subasta en la forma dispuesta por la ley para venta de propiedad personal sujeta a ejecución. Así se asumió, sin discutirlo, en *Federal Land Bank* v. *León,* 56 D.P.R. 887 (1940).

de una sentencia condenatoria de pago dictada en un procedimiento seguido bajo la ley especial para reclamaciones por cantidades no mayores de $100.00, 32 L.P.R.A. sec. 3031 (ley que no provee nada distinto en cuanto a la publicación de los avisos de subasta), dijimos, a la pág. 971:

"En cuanto a que los edictos de la subasta celebrada por el márshal de la corte municipal no fueron publicados por el término de ley, ya que no mediaron veinte días entre la publicación del primero y la del último, será suficiente expresar que aparece de los autos que entre el primer edicto y la subasta mediaron veintitrés días, que es suficiente según hemos declarado. . . ."

El tercer error señalado es al efecto de que se violó la Regla 51.5 al ejecutarse un inmueble sin haberse antes dado pasos para ejecutar bienes muebles. Si bien en la demanda se alegó que el deudor por sentencia poseía bienes muebles suficientes para cubrir el importe de la sentencia, tal alegación fue negada en la contestación y quedó huérfana de prueba. En tal situación mal podía el tribunal de instancia considerar los merecimientos de la misma.

El cuarto y último señalamiento es al efecto de que el tribunal erró al no hacer conclusión alguna respecto a que el hogar seguro está exento de embargo y que se desatendieron las disposiciones de ley relativas al hogar seguro.

La institución del hogar seguro tiene en Puerto Rico base constitucional. Dispone nuestra Constitución, Art. II, Sec. 7, que "Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargos." Dicha institución aparece definida y reglamentada más específicamente en nuestra legislación ordinaria. Ley Núm. 87 de 13 de mayo de 1936, según enmendada, ley que derogó la del 12 de marzo de 1903; 31 L.P.R.A. secs. 1851 a 1857. Sostienen los recurridos que la reclamación del hogar seguro tenía que haberse hecho durante el acto de la venta, cosa que no se hizo en este caso. No tienen razón.

■ El asunto de cómo ha de hacerse la reclamación del hogar seguro en casos de venta por virtud de sentencia o ejecución, está reglamentado por las Secs. 5 y 6 de la citada Ley Núm. 87, 31 L.P.R.A. secs. 1855 y 1856. La Sec. 5 gobierna la situación cuando la reclamación se hace dentro del procedimiento principal de ejecución. En este supuesto la reclamación se hace mediante moción presentada dentro del término de 30 días a contar desde la fecha en que se hizo la venta. La Sec. 6 gobierna la situación en la cual no se formula la reclamación dentro del procedimiento principal sino cuando se hace entablando una acción separada y para lo cual la ley da un término de un año. Dice dicha Sec. 6 de la Ley Núm. 87, 31 L.P.R.A. sec. 1856:

"En caso de no formularse reclamación alguna ante el oficial encargado de verificar la subasta, la persona con derecho a la reclamación de hogar seguro, podrá dentro del término de un (1) año, contado desde la fecha en que se le notifique la venta, entablar la acción ordinaria correspondiente debiendo el oficial que verificó la subasta notificar la venta a la persona con derecho a dicha reclamación, entregándole una copia certificada del acta de la subasta dentro de un plazo de veinte (20) días a partir de la fecha de la misma."

En el caso de autos la subasta se celebró el 5 de diciembre de 1963 y la demanda se presentó el 14 de enero de 1964. En el párrafo Núm. 2 de dicha demanda los demandantes alegan que sobre el inmueble en discusión ellos tienen establecido su residencia y hogar seguro desde el año 1959 y que el valor del mismo es de alrededor de $12,000.00 a $13,000.00. La misma se presentó, desde luego, en tiempo. Demandaron a los cuarenta días y tenían un año para hacerlo. Así lo resolvimos en *R. Ruiz & Co.* v. *Marcano*, 61 D.P.R. 258 (1943), en donde igual que en el caso de autos el demandante procedió bajo la Sec. 6 de la Ley Núm. 87 y no bajo la Sec. 5 de dicha ley. Allí dijimos, a la pág. 261:

"Diecinueve días después de celebrada la venta judicial y de conformidad con lo que dispone la sección 6, Marcano inició una acción para hacer efectivo su derecho de hogar seguro, que una corte de distrito ha reconocido en una sentencia final y firme. Habiendo elegido proceder por medio de una demanda bajo la sección 6 en vez de a través de una reclamación bajo la sección 5, los derechos substantivos estatuídos en la sección 5 fueron debidamente ejercitados en la mencionada demanda."

No tenemos dudas de que el inmueble ejecutado pertenecía a los recurrentes. De otro modo no pudo habérseles embargado. Además, la escritura de compraventa está incluida en los autos del caso de desahucio. También se probó la ocupación del inmueble como residencia de los recurrentes. Los autos del caso Núm. 64-2090 sobre desahucio en precario fueron ofrecidos y admitidos en evidencia sin objeción y esto constituyó la renuncia de cualquier queja sobre su admisión. Dichos autos se convirtieron en parte de la evidencia y pueden utilizarse como prueba. McCormick *On Evidence* (1954) págs. 115 y 126–128.

Además, en las mociones de 18 de febrero y 18 de mayo de 1966, radicadas por los recurridos solicitando el lanzamiento de los recurrentes, se alega específicamente que "desde el día 8 de octubre de 1964 a esta fecha los aquí demandados se hallan ocupando el inmueble." En la sentencia ordenando el desahucio, el propio tribunal concluye que los recurrentes "detentan la propiedad inmueble antes indicada contra la voluntad expresa de los demandantes."

■ En *Franceschi* v. *Claudio Elena*, 51 D.P.R. 495, 503 (1937), dijimos en relación con los demandantes, quienes compraron el inmueble al comprador en subasta: "Cuando éstos compraron la finca, el demandado, antiguo dueño de la misma, se encontraba ocupando la casa con su familia, hecho que no podían ignorar los demandantes y que era por sí solo suficiente para darles aviso y obligarles a indagar si el demandado ocupaba la propiedad en concepto de arrendatario o como dueño del derecho de *homestead*." La ocupación

por el dueño es notificación a todos de su derecho de hogar seguro. *Bartold* v. *Lewandowska,* 8 N.W.2d 133; *Bank of Hoxie* v. *Graham,* 44 S.W.2d 1099; *Cline* v. *Niblo,* 8 S.W.2d 633.

Se cometió el cuarto error señalado.

En vista de lo anterior corresponde *modificar la sentencia dictada por el tribunal de instancia en este caso, a los efectos de ordenar a los compradores en subasta que paguen a los demandantes-recurrentes la suma de $1,500.00 a la cual éstos tienen derecho por concepto de hogar seguro más los intereses legales desde la fecha de la subasta y $500.00 por concepto de honorarios de abogado.*

*Así modificada se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 24 de enero de 1966.*