Brau Ramírez, Juez Ponente
*976 TEXTO COMPLETO DEXA RESOLUCION
i
Los peticionarios- Jaime González Oliver, Maricel-Guadalupe Esteyes Navarro y 4la sociedad legal de gananciales compuesta por ambos recurren, mediante la presente petición de certiorari, de una resolución emitida el 14 de noviembre de 1994 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, denegando una moción de impugnación de subasta presentada por los peticionarios para cuestionar la venta en pública subasta de un inmueble perteneciente a la Sra. Esteves Navarro sito en Aguadilla, en ejecución de la sentencia en rebeldía emitida contra los peticionarios por dicho foro el 19 de octubre de 1993 en el pleito-'de epígrafe ■ sobre cobro de dinero.y ejecución de hipoteca presentado por la parte recurrida, Ponce Federal Bank, F.S.B. ("el Banco").
El 29 de noviembre de 1994, los peticionarios solicitaron reconsideración de la resolución del Tribunal de Primera Instancia. Esta solicitud fue acogida por el Tribunal y finalmente denegada el 21 de junio de 1995, luego de otros trámites.
Por entender que la decisión-del foro de instancia fue correcta, denegamos el.recurso.
II
Según surge de la petición, el 28 de octubre de 1992, el Banco presentó una demanda en cobro de dinero y ejecución de hipoteca contra los peticionarios ante el Tribunal de Primera Instancia, reclamando la suma de $75,245.19 por concepto de principal e intereses sobre un préstamo concedido por el Banco a los peticionarios. Se solicitaba, además, la ejecución de un pagaré hipotecario por la cantidad de $100,000.00 otorgado por la Sra. Esteves Navarro y entregado en prenda al Banco en garantía del préstamo, así como la ejecución de la .propiedad privativa inmueble de la Sra. Esteves Navarro, que servía de garantía a dicho pagaré. Aunque en el texto del contrato-de prenda suscrito por la Sra. Esteves Navarro no se hacía ninguna indicación sobre el particular, se incluyeron en maquinilla las palabras "deudor solidario” bajo su firma.
Los peticionarios fueron debidamente emplazados, pese a lo cual no contestaron la ¡demanda-del Banco, siendo anotada su rebeldía. Luego de otros trámites, el Tribunal dictó sentencia en rebeldía el 19 de octubre de 1993, concediendo los remedios solicitados por el Banco. Dicha sentencia no fue recurrida por los peticionarios, adviniendo la misma final y firme.
El 8 de diciembre de 1993, el Banco presentó una solicitud de ejecución de sentencia. En respuesta a la misma, el Tribunal ordenó la venta en pública subasta de la propiedad inmueble de la Sra. Esteves Rosario. Se señaló dicho acto para el 18 de febrero de 1994.
El día antes de esa fecha, 17 de febrero de 1994, y luego de varias conversaciones, las partes otorgaron un contrato conviniendo posponer la ejecución de la propiedad para brindar a los peticionarios la oportunidad de obtener el dinero y saldar la deuda. Se pactó un término de 45 días para realizar dicho pago. Los peticionarios acordaron ceder, como garantía adicional para el pago de la obligación, los cánones de arrendamiento que estaban percibiendo sobre el inmueble hipotecado, así como la participación hipotecaria del peticionario González Oliver en el caudal relicto de su difunta madre. Las partes acordaron, además, que si los peticionarios incumplían con los términos del acuerdo, el Banco podría continuar con el procedimiento de ejecución. El documento también establecía que "la firma de este contrato no se considerará como una novación del préstamo comercial concedido por el Banco al Deudor".
El plazo convenido expiró, sin que los peticionarios hubieran realizado el pago acordado. No obstante, los .peticionarios continuaron haciendo gestiones.para obtener financiamiento para saldar la deuda. Permanecieron, además, en comunicación con los agentes del Banco en tomo a estas gestiones. El Banco, no obstante, procedió a solicitar una nueva subasta del inmueble, la que quedó pautada para el 3 de junio de 1994, a las 10:00 a.m.
El 27 de abril de 1994, el Sr. Carlos A. Del Valle, emplazador del Banco, colocó avisos de subasta en el Tribunal, la Colecturía y la Alcaldía del Municipio de Aguadilla y en la Colecturía de Santurce, Parada 22 y la Escuela Superior Rafael Cordero, Parada 15 de Santurce. El 29 de abril de 1994, la *977 Srta. Amarilis Berrios, empleada del Banco, envió copia del aviso de pública subasta a los peticionarios mediante correo certificado, a la dirección de éstos en la Calle Unión Núm. 654 en Miramar, Santurce. Los peticionarios alegadamente nunca recibieron la misma.
En el recurso de certiorari de los peticionarios se incluye el siguiente recuento de los sucesos posteriores:

"[E]l mismo día de la subasta, el Ledo. Lorenzo Muñoz Franco, quien en su carácter no de abogado sino de amigo del Sr. González Oliver, venía haciendo gestiones para [el] fmandamiento [de la deuda], se comunicó por teléfono con el Ledo. Frankie García, uno de los abogados de la parte demandante para ponerlo al día de las gestiones que se estaban realizando, indicándole que se proponían efectuar el cierre de la transacción de financiamiento para satisfacer la sentencia durante elfin de semana o principio de la próxima semana, y solicitándole que preparara un contrato por virtud del cual la persona que iba a facilitarle el dinero al Sr. González Oliver habría de adquirir, por cesión, la sentencia dictada en el caso como garantía, evitando así la ejecución de la misma. El Ledo. Frankie García accedió a preparar el documento y le dio el teléfono de su residencia al Ledo. Muñoz Franco para mantenerse en comunicación el fin de semana.... En ese momento ni los demandados ni el Ledo. Muñoz Franco tenían conocimiento de que la subasta estuviese señalada para ese mismo día a las 10:00 a.m."

En la petición se añade:

"Esta conversación se efectuó temprano en la mañana del 3 de junio de 1994, ciertamente bastante antes de las 10:00 a.m. Posteriormente, algún tiempo después de esa hora, el Ledo. Muñoz Franco recibió una llamada del Ledo. Frankie García, manifestándole que éste era el abogado que llevaba el caso y que la subasta se iba a celebrar esa misma mañana a las 10:00 a.m. El Ledo. Muñoz Franco le pidió al Ledo. Frankie García que se comunicara con el Ledo. Portuondo, vice-presidente del Banco a cargo de Reclamaciones y Litigios, o con quien tuviese que comunicarse en el Tribunal Superior de Aguadillo, para que procediera a la suspensión de la subasta. Pasado algún tiempo luego de esta conversación telefónica, el Ledo. Muñoz Franco recibió otra llamada del Ledo. Frankie García advirtiéndole que no se habían podido comunicar ni con el Ledo. Portuondo, ni con la abogada que el bufete había enviado a Aguadillo para el remate. Con posterioridad a esta conversación se produjo otra llamada telefónica en la cual el Ledo. Frankie García le informó al Ledo. Muñoz Franco que se había logrado comunicar y que un tercero se había llevado la subasta. Pasado el mediodía, el Ledo. Muñoz Franco recibió otra llamada del Ledo. Portuondo informándole que lo lamentaba pero que ya un tercero se había llevado la subasta."

El tercero adjudicatario de la subasta resultó ser el Ledo. Rafael Anglada López. El 7 de julio de 1994, los peticionarios presentaron ante el foro de Primera Instancia una moción solicitando que se decretara la nulidad de la subasta. El Tribunal, luego de otros incidentes, emitió la resolución recurrida denegando la moción. Según indicado anteriormente, el Tribunal también denegó una moción de reconsideración presentada por los peticionarios. Insatisfechos, estos últimos acudieron a este Tribunal.
m
En su recurso, los peticionarios exponen una serie de argumentos para atacar la validez de la subasta. En primer lugar, se alega que, aunque los peticionarios estaban en rebeldía, resultaba necesaria la celebración de una vista previo a dictar sentencia, conforme a la Regla 45.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill R. 45.2, debido a que el balance específico de la deuda no surgía de documento alguno. También plantean que, en virtud de lo establecido por el art. 1729 del Código Civil, 31 L.P.R.A. see. 4891, no podía ejecutarse un bien privativo de la Sra. Esteves Nazario sin antes hacer excusión de los bienes de la sociedad legal de bienes gananciales compuesta por ésta y su marido, ya que la Sra. Esteves Nazario no se constituyó en fiadora solidaria de la deuda.
Se trata, sin embargo, de argumentos que inciden sobre la validez de la sentencia, la cual es final y firme en esta etapa. Véase, Worldwide Distributors, Inc. v. Colón Bermúdez,_D.P.R._(1993), 93 J.T.S. 114. En cualquier caso, opinamos que los argumentos de los peticionarios carecen de mérito.
*978 La sentencia en rebeldía dictada por el Tribunal estuvo basada, entre otros documentos, en una declaración jurada del Sr. Francisco J. Portuondo, vice-presidente del Banco a cargo del Departamento de Reclamaciones y' Litigios,' acreditando1 el monto del--balanee-adeudado. Dicha declaración, a nuestro juicio,-era suficiente'para justificarla sentencia del-Tribunal, sin necesidad de una vista. Compárese, Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809 (1978). 
En cuanto al contrato de prenda, éste, según hemos visto, contenía una indicación a los fines de que la Sra. Esteves Navarro era una "deudora solidaria" del préstamo. El Tribunal de Instancia pudo considerar que dicho lenguaje era suficiente.para dispensar al Banco de realizar excusión de bienes, a la luz de las circunstancias de las partes. Véase, 31 L.P.R.A. sec. 4892; véanse, además, Mansiones P. Gardens v. Scotiabank, 114 D.P.R. 513 (1983); Carr v. Nones, 98 D.P.R. 236 (1970); Santini Fertilizer Co. v. Flores, 40 D.P.R. 407 (1930).
Los peticionarios también plantean que el Tribunal de Primera Instancia erró al ordenar la subasta, toda vez que las partes habían otorgado un contrato post-sentencia cuyas obligaciones no eran auto-ejecutables. Según1 los peticionarios,' era • necesaria una nueva- declaración judicial de incumplimiento por-parté de-los peticionarios antes--de -concederse..un remedio- en. su contra. No estamos de acuerdo.
En su esencia, el contrato post-sentencia otorgado por los peticionarios consistió meramente en la concesión de un plazo adicional de 45 días para realizar el pago de la sentencia. Dicha prórroga se produjo el día antes de la fecha originalmente designada para la subasta. Este tipo de modificación, de ordinario no tiene un efecto extintivo de la obligación original. Véase, Miranda Soto v. Mena Eró, 109 D.P.R. 473, 479-480 (1980); véase, además, José María Manresa y Navarro, Comentarios al Código Civil, Tomo VIII, Vol. I, 6ta. ed., Reus, Madrid, 1967, págs. 865-866 ("[l]a simple prórroga del plazo no constituye novación pues afecta a la ejecución y no ala constitución de la obligación, ni en tal supuesto se produce la clara incompatibilidad que caracteriza la operación novatorial"). En el referido contrato, las partes expresamente lo reconocieron así, disponiendo que "la firma de este contrato no se considerará como una novación del préstamo comercial concedido por el Banco al Deudor".
En cualquier caso, cabe observar que, de acuerdo a los términos expresos del negocio, las partes convinieron que "[e]n la eventualidad que el Deudor incumpla con los términos de este acuerdo, el Banco podrá continuar el procedimiento de subasta..." Habiendo pactado expresamente la continuación del proceso de ejecución, en caso de no pagar la deuda dentro del plazo acordado, la parte peticionaria está impedida de ir en contra de sus propios actos. Véase, International General Electric, Puerto Rico, Inc. v. Concrete Builders of P.R., Inc., 104 D.P.R. 871 (1976).
La parte peticionaria plantea que la subasta fue nula porque el Banco actuó de mala fe. Se refiere al incidente relatado en su petición acontecido la mañana de la subasta. Suponiendo, para fines de la discusión, que los hechos efectivamente transcurrieron en la forma relatada, opinamos que el Tribunal no cometió error alguno al denegar este planteamiento. En efecto, aunque los peticionarios se quejan de que los funcionarios del Banco representaron que habrían de aceptar el pago de la sentencia, sin informarle a los peticionarios que la subasta estaba pautada para esa misma fecha, no surge que dicha actuación hubiera constituido un engaño intencional.
Según admiten los peticionarios, el Ledo. Muñoz Franco, quien se comunicó esa mañana con el agente del Banco, Ledo. García, no representaba formalmente a los peticionarios ni podía haber atado a éstos a ninguna promesa, no obstante lo cual el Ledo. García aceptó su intervención. Es significativo que fue el propio Ledo. García quien poco después de su conversación inicial con el Ledo. Muñoz Franco se comunicó con éste para advertirle que la subasta estaba señalada para ese día. El Ledo. García hizo gestiones, además, para tratar de comunicarse con el Ledo. Portuondo y con la abogada del Banco enviada al Tribunal y detener la subasta, las cuales resultaron infructuosas. Contrario a lo que plantea la parte peticionaria, esta conducta no es sugestiva de dolo sino, a lo sumo, de una falta de coordinación entre los distintos agentes del Banco.
No está claro, por otro lado, que las representaciones del Ledo. García hubieran inducido a los peticionarios a colocarse en una situación más desventajosa de la que ya se encontraban por virtud de *979 la sentencia del Tribunal. No se alega que los peticionarios hubieran incurrido en nuevas obligaciones o gastos o que hubieran renunciado a defensas o reclamaciones que de otro modo hubieran podido interponer, que es el tipo de supuesto en el que el Tribunal Supremo de Puerto Rico ha reconocido la concesión de un remedio por la violación al principio de buena fe. Véanse, Berríos v. U.P.R., 116 D.P.R. 88 (1985); Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517 (1982), Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585 (1981).
Según ha observado el Tribunal Supremo, "la frase 'buena fe', como norma interpretativa, significa confianza, seguridad y honorabilidad basada en ella. La palabra fe', fidelidad, quiere decir que una de las partes se entrega confiadamente a la conducta 'leal de la otra.' " Berríos v. U.P.R., 116 D.P.R. a la pág. 98. Es natural que, cuando una de las partes se coloca en una posición desventajosa confiando en la "buena fe" de la otra, esta última sea atada al contenido ético de sus representaciones y que el Tribunal intervenga para corregir, utilizando sus poderes de equidad, cualquier desproporción ocasionada por una aplicación estricta del ordenamiento.
En el presente caso, sin embargo, la conducta del Banco de discutir la posibilidad de conferir nuevas facilidades de pago a los peticionarios no parece haber estado motivada por consideración alguna que no fuera la mera liberalidad de dicha institución. Dicha conducta no ocasionó daño real alguno a los peticionarios. En estas circunstancias, procede denegar dicho argumento.
Por último, alegan los peticionarios que el Tribunal de Primera Instancia debió haber decretado la nulidad de la subasta, por cuanto los peticionarios no recibieron una notificación adecuada de la subasta.
La venta judicial de bienes en ejecución de una sentencia está generalmente gobernada por la Regla 51.8 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.3 Dicho precepto, establece, en su parte pertinente, que:

"[a]ntes de verificarse la venta de los bienes objeto de la ejecución, deberá publicarse la misma por espacio de dos semanas mediante avisos por escrito visiblemente colocados en tres sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Se publicará, además, dicho aviso en la colecturía y en la escuela pública del lugar de residencia del demandado, cuando ésta fuera conocida, o en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, por espacio de (2) dos semanas y por lo menos una vez por semana."

La Regla no requiere una notificación directa a la dirección del demandado. Compárese, Albaladejo v. Vilella Suau, 106 D.P.R. 331t 337 (1977); Avilés Vega v. Torres, 97 D.P.R. 144, 147-151 (1969). No obstante, según la declaración jurada de la Srta. Berrios, el Banco envió notificación por correo certificado a los peticionarios el 29 de abril de 1994, a la dirección de éstos en Miramar. 
El Banco también procedió a la notificación de la subasta en la forma provista por las Reglas. Conforme a su declaración jurada, el Sr. Del Valle colocó copias del aviso de subasta en el Tribunal, la colecturía y la alcaldía del Municipio de Aguadilla, así como en la colecturía de la Parada 22 de Santurce y la Escuela Superior Rafael Cordero sita en la Parada 15 de Santurce. Coincidimos con el Tribunal de Primera Instancia en que dichas gestiones constituyeron una notificación adecuada del acto.
Los peticionarios alegan que la declaración jurada del Sr. Del Valle es defectuosa porque ”[s]i bien... expresa que colocó en forma visible copia del aviso de subasta el 27 de abril de 1994 en los sitios antes indicados, no establece que dichos avisos permanecieran allí colocados por espacio de dos semanas". Cabe señalar que el Sr. Del Valle prestó una segunda declaración aclarando este extremo. Aunque la parte peticionaria alega que "[ejsta declaración jurada carece de méritos toda vez que envuelve una mera conclusión sin exposición de los hechos específicos de los cuales pueda deducirse que efectivamente los Avisos de Subasta permanecieron en el mismo lugar continuamente por espacio de dos semanas", entendemos que la misma es suficiente.
La Regla 58.1(a) no requiere que la parte ejecutante de una sentencia permanezca por dos semanas en estado continuo de contemplación de los avisos colocados en los lugares mencionados en la Regla, *980 previo a certificar haber dado cumplimiento a la notificación exigida por la Ley. Los peticionarios, significativamente, no han ofrecido evidencia alguna que tienda siquiera a sugerir que los avisos no permanecieron en el lugar en que' habían sido colocados. En-estas circunstancias, puede descansarse en la inferencia de que la-publicación fue continua por el lapso de tiempo.requerido .
Los peticionarios cuestionan la constitucionalidad de la Regla 58.1(a), alegando que la misma autoriza la privación de la propiedad de los peticionarios sin ofrecerles una notificación adecuada y oportunidad de ser oídos. Invocan lo resuelto por el Tribunal Supremo de Puerto Rico en Rivera Rodríguez & Co. v. Stowell,_D.P.R._(1993), 93 J.T.S, 111 y por el Tribunal Supremo de los Estados Unidos en Connecticut v. Doehr,_U.S._, 115 L. Ed. 1 (1991).
Lo cierto es que el tipo de garantía procesal constitucionalmente requerida para afectar la propiedad de una parte varía dependiendo de si dicha intervención es previa o posterior a la sentencia. Véase, e.g., la Regla 56.3 de las de Procedimiento Civil, 32 L.P.R.A., Ap. Ill, R. 56.3 (eximiendo requisito de fianza cuando el remedio es gestionado después de la sentencia); Albaladejo v. Vilella Suau, 106 D.P.R. 331, 335 (1977). Guando, como en el presente caso, se trata de una ejecución de una sentencia y la parte ya-ha.tenido la.oportunidad.de ser notificada del,procedimiento y escuchada en los méritos, la garantía del debido procedimiento no exige una nueva notificación antes de ejecutar su propiedad. Véase, Dionne v. Bouley, 757 F.2d 1344, 1352 (1st Cir. 1985); compárese, Endicott Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285 (1924).
En cualquier caso, según hemos indicado, la notificación de la subasta sí fue enviada por el Banco, mediante correo certificado, a la dirección de los peticionarios. Esta gestión, a nuestro juicio, era suficiente para cumplir con el debido proceso de ley. Compárese, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950).
Por los fundamentos expresados, se deniega el auto solicitado.
Lo pronunció el Tribunal y lo certifica la señora Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 95 DTA 250
1. Los peticionarios posiblemente también están impedidos de cuestionar la sentencia, por cuanto reconocieron la obligación impuesta por la misma, mediante el contrato otorgado el 17 de febrero de 1994. Véase, International General Electric, Puerto Rico, Inc. v. Concrete Builders of Puerto Rico, Inc., 104 D.P.R. 871 (1976)
2. En efecto, la Regla 45.2(a) permite que la sentencia en rebeldía sea dictada por el Secretario, y por lo tanto, sin vista, cuando la reclamación contra el demandado es por una suma líquida "o por una suma que pudiera liquidarse mediante cómputo", una vez se hubiera presentado una "declaración jurada de la cantidad adeudada."
3. En casos de ejecución de hipoteca, el art. 149 de la Ley Hipotecaria, según enmendado, 30 L.P.R.A. see. 2473, requiere que el titular demandado que hubiera comparecido a juicio sea citado para la subasta "por medio de sus abogados", así como la citación "conforme a lo dispuesto en la legislación procesal vigente para el caso de los demandados," de todas las partes a cuyo favor se hubiera inscrito un gravamen o derecho con posterioridad a la hipoteca y con anterioridad a la anotación de demanda. En el caso de autos, entendemos que dicho requisito hubiera sido inaplicable, por cuanto la sentencia contra los peticionarios fue emitida en rebeldía.
4. Los peticionarios alegan que no existe constancia de dicha notificación. Sin embargo, en las páginas 113 y 114 del apéndice al recurso, se incluye copia de la comunicación enviada por la Srta. Berrios, así como de los recibos de correo correspondientes.
*981 5. El caso de Doehr, supra, así como las decisiones del Tribunal Supremo de los Estados Unidos en Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337 (1969); Fuentes v. Shevin, 407 U.S. 76 (1972); Mitchell v. W.T. Grant Co., 416 U.S. 600 (1974) y North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601 (1975) envolvían procedimientos pre-sentencia o procesos sumarios.