CC-2000-1032                                                  1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Alfredo París Giboyeaux, et als.<br>    Recurridos<br><br>        v.<br><br>Flora Ramos<br>    Peticionaria | Certiorari<br><br>2002 TSPR 42<br><br>156 DPR \_\_\_\_ |

Número del Caso: CC-2000-1032


Fecha: 5/abril/2002


Tribunal de Circuito de Apelaciones:
                         Circuito Regional VII


Juez Ponente:
                 Hon. Rafael Martínez Torres


Abogados de la Parte Peticionaria:
                 Lcdo. René Arrillaga Beléndez
                 Lcdo. René Arrillaga Armendáriz


Abogado de la Parte Recurida:
                 Lcdo. Eric M. Quetglas Jordán


Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del proceso
        de compilación y publicación oficial de las decisiones del
        Tribunal. Su distribución electrónica se hace como un servicio
        público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Alfredo París Giboyeaux
et als

       Recurridos

         v.

                                      CC-2000-1032    Certiorari

Flora Ramos

       Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 5 de abril de 2002.

    Mediante el presente recurso de <u>Certiorari</u>, la peticionaria recurre ante esta Curia solicitando que revisemos una sentencia emitida por el Tribunal de Circuito de Apelaciones. El foro apelativo intermedio confirmó una sentencia sumaria parcial dictada por el Tribunal de Primera Instancia. ¿Puede una parte ejecutar en un pleito de daños y perjuicios una sentencia obtenida en el año 1970 en otro pleito sobre división de comunidad? Ese es el asunto sometido ante nos.

I

**En el Registro de la Propiedad de Puerto Rico, Sección de Carolina, se encuentra inscrita a nombre de la señora Flora Ramos una finca de 1.58 cuerdas de terreno ubicada en el Barrio Cangrejos**

Arriba del Municipio de Carolina.[1]  A pesar de que en el Registro de la Propiedad aparece inscrita la finca a nombre de doña Flora Ramos, la realidad es que la propiedad pertenecía a una comunidad pro indiviso compuesta por don Leoncio París, su esposa doña Rita Giboyeaux, y por doña Flora Ramos.[2] El antiguo Tribunal Superior, Sala de San Juan, dictó sentencia en agosto de 1959 y determinó que a los esposos París Giboyeaux le correspondía un 37.5% de participación en la comunidad y a doña Flora Ramos le correspondía el 62.5%.[3]  El 30 de abril de 1970, el antiguo Tribunal Superior, Sala de San Juan, dictó sentencia en el caso civil número 64-993, Leoncio París, y otros v. Flora Ramos, sobre división de comunidad,[4] basada en una estipulación que las partes realizaron en el año 1965, cuando el pleito comenzaba.[5]  Mediante dicha sentencia, se le adjudicó al matrimonio París Giboyeaux una parcela de terreno, cuya cabida superficial ascendía a 1,754.20 metros cuadrados.  A la señora Flora Ramos se le adjudicó otra parcela, cuya cabida era de 4,194.30 metros cuadrados; todo esto como equivalente de sus respectivas participaciones en la comunidad.[6]

El señor Leoncio París entró en posesión de la parcela que le fue adjudicada mediante la sentencia dictada en 1970, y la estuvo disfrutando desde entonces.[7]  Dedicó parte de la misma a la crianza de animales. Arrendó, además, tres estructuras de hormigón que ubicaban en la parcela y disfrutó de los cánones de arrendamiento que devengaron.  El señor París continuó en la posesión de la propiedad hasta febrero de 1972, cuando falleció.[8]  Esta parcela nunca se inscribió a nombre de don Leoncio París

---

[1] Apéndice del recurso de Certiorari, pág. 20.

[2] Íd., págs. 7 y 277.

[3] Íd., pág. 7.

[4] Íd., págs. 7-9.

[5] Íd., pág. 11.

[6] Íd., pág. 8.

[7] Íd., pág. 55.

[8] Íd.

y su esposa doña Rita Giboyeaux.[9]  Poco después de la muerte de don Leoncio París, la señora Flora Ramos ordenó que se construyera un portón en la finca, impidiendo el paso hacia la parcela antes mencionada.[10]

Así las cosas, el 30 de agosto de 1974, la señora Rita Giboyeaux, presentó una demanda de liquidación de sociedad legal de gananciales contra los miembros de la sucesión de su difunto esposo, don Leoncio París.[11]  El 24 de febrero de 1986, el antiguo Tribunal Superior, Sala de San Juan, dictó sentencia en el caso iniciado por doña Rita Giboyeaux.[12]  Dicho Tribunal aceptó la oferta de compra hecha por el señor Luis Alfredo París Giboyeaux, y dictó sentencia de conformidad.[13]  Como consecuencia, el señor París Giboyeaux, advino dueño de las participaciones de los demás coherederos en la sucesión de su padre fallecido, el señor Leoncio París.

La señora Rita Giboyeaux falleció el 20 de noviembre de 1990.[14]  Luego de la muerte de su señora madre, el señor París Giboyeaux adquirió, mediante compra, las participaciones de sus hermanos en la herencia de su madre.[15]  De esta forma, el señor París Giboyeaux se convirtió en el único dueño, en su totalidad, de la parcela de terreno que le pertenecía a sus difuntos padres.

Una vez advino dueño de la propiedad, comenzó a hacer gestiones para venderla.[16]  Luego de varias comunicaciones infructuosas con la parte demandada de autos, conducentes a que se le permitiera acceso a la parcela de terreno, el señor Luis Alfredo París Giboyeaux, su esposa Judith Vicenty Ramírez, y la sociedad legal de gananciales compuesta por ambos, presentaron una demanda el 16 de octubre de 1996 ante el Tribunal de Primera Instancia,

---

[9] Íd. pág. 277.

[10] Íd., pág. 55.

[11] Íd. págs. 80-81.

[12] Íd., pág. 57.

[13] Íd.
[14] Íd., pág. 58.

[15] Íd.

[16] Íd.

Sala Superior de San Juan, contra la señora Flora Ramos.[17]  En dicha demanda se solicitó la indemnización por la privación del uso y disfrute de la parcela de terreno, por la destrucción de los edificios que enclavaban en la misma y resarcimiento por los daños y angustias mentales sufridos por los demandantes a causa de la posesión ilegal de la parcela por parte de la señora Ramos.[18]  La señora Ramos contestó la demanda el 21 de enero de 1997,[19] levantando como defensas afirmativas: (1) que la causa de acción por daños y perjuicios estaba prescrita; (2) que no se le incluyó como parte en el pleito de liquidación de bienes gananciales del señor París; y (3) que adquirió la parcela de terreno mediante prescripción ordinaria o extraordinaria.[20]  Además, presentó una reconvención solicitando la indemnización por los daños y perjuicios que le causaron los demandantes al incumplir las condiciones previas antes de poder adquirir la parcela, y que durante la liquidación de los bienes gananciales del señor París se dividieron bienes que le pertenecían a ella.[21]  El 21 de julio de 1998, la parte demandante presentó demanda enmendada para incluir una alegación relacionada a las solicitudes infructuosas que hicieron por años a la parte demandada para que segregara la parcela objeto del litigio, y para solicitar al tribunal que ordenara la referida segregación.[22]  El 14 de julio de 1999, la parte demandada contestó la demandada enmendada, negó los hechos expuestos en la misma y levantó como defensa afirmativa, en síntesis, que la propiedad no le pertenecía al señor París por incumplir las condiciones previas estipuladas por las partes.[23]

---

[17] Íd., pág. 1.

[18] Íd.

[19] Íd., pág. 24.
[20] Íd.

[21] Íd.

[22] Íd., pág. 12.

[23] Íd., pág. 28.

El 8 de agosto de 1998, la señora Flora Ramos presentó una "Moción de Desestimación".[24]   Adujo como fundamento el hecho de que la parte demandante estaba solicitando la ejecución de la sentencia de un caso resuelto en 1970 sin cumplir con lo establecido en la Regla 51.1 de Procedimiento Civil,[25] la cual dispone que no se puede ejecutar una sentencia luego de pasados cinco (5) años de ser final y firme, salvo por autorización judicial.   La parte demandante se opuso a la desestimación, mediante escrito de 7 de octubre de 1998.   Señaló la parte demandante, que al caso de 1970 no le es aplicable la Regla 51.1 de Procedimiento Civil, _supra_, porque la sentencia en dicho caso lo que establece es el modo y la forma de dividir la finca, por lo que no requiere ejecución.[26]   Mediante resolución de 26 de febrero de 1999, notificada a las partes el 9 de marzo del mismo año, el Tribunal de Primera Instancia resolvió que era necesario ejecutar la sentencia de 1970 y le ordenó a la parte demandante que mostrara las razones por las cuales el tribunal debía autorizar su ejecución, pasados los cinco (5) años de ser final y firme sin que se hubiera ejecutado la misma.[27]   Mediante escrito de 22 de abril de 1999, la parte demandante compareció y adujo como fundamento para la autorización de la ejecución de la referida sentencia el hecho de que su padre usó y disfrutó de la propiedad mientras estuvo vivo, y que luego de fallecer éste, la demandada de autos cerró el acceso a la parcela. Además, utilizó como fundamento el hecho de que la sucesión estuvo envuelta en pleitos de división de bienes hasta el 1994.[28]   La parte demandada de autos presentó una "Dúplica" el 25 de mayo de 1999.[29]   Finalmente, el foro de primera instancia autorizó la ejecución de la sentencia emitida por el antiguo Tribunal Superior, Sala de San Juan, el 30 de abril de 1994 (caso civil número 64-993), mediante orden notificada a las partes el 23 de junio

---

[24] Íd., pág. 31.

[25] 32 L.P.R.A. Ap. III, R. 51.1.

[26] Apéndice del recurso de _Certiorari_, pág. 38.

[27] Íd., pág. 42.

[28] Íd., pág. 48.

[29] Íd., pág. 63.

de 1999.[30]   La parte demandada de autos presentó una moción de reconsideración sobre dicha orden, alegando, en esencia, que la parte demandante no cumplió con los términos de la estipulación que dio lugar a la sentencia del 30 de abril de 1970 y que no procedía ordenar la ejecución sin permitirle presentar sus defensas de prescripción y caducidad de la sentencia.[31]   La parte demandante replicó a la referida moción de reconsideración y la parte demandada de autos presentó la correspondiente dúplica.[32]   Posteriormente, la señora Flora Ramos presentó ante el Tribunal de Primera Instancia una demanda contra terceros, en contra de los abogados del señor Luis Alfredo París Giboyeaux.   Los terceros demandados presentaron las correspondientes mociones de desestimación alegando prescripción de la causa de acción.[33]   Luego de varios trámites procesales, el Tribunal de Primera Instancia dictó sentencia parcial el 31 de mayo de 2000, copia de cuya notificación se archivó en autos el 20 de junio de 2000.[34] En dicha sentencia parcial se declaró no ha lugar la referida moción de reconsideración, y se ratificó la orden dictada el 23 de junio de 1999 ordenando la ejecución de la sentencia dictada en 1970, y se desestimó la demanda contra los terceros demandados.

Inconforme, la demandada de autos recurrió, mediante recurso de apelación, ante el Tribunal de Circuito de Apelaciones el 20 de julio de 2000.   El 31 de octubre de 2000, el foro apelativo intermedio dictó sentencia confirmando la determinación del Tribunal de Primera Instancia.[35]   Se archivó en autos copia de su notificación a las partes el 9 de noviembre del mismo año.

No conforme con dicha determinación, la señora Flora Ramos recurrió ante esta Curia el 11 de diciembre de 2000, mediante el presente recurso

---

[30] Íd., pág. 65.

[31] Íd., pág. 66.

[32] Íd., págs. 145 y 162.

[33] Íd., pág. 167.

[34] Íd., pág. 198.

[35] Íd., pág. 275.

de <u>Certiorari</u>.  Le imputó al foro apelativo intermedio el haber incurrido en los errores siguientes:[36]

### Primer Error

Erró el Honorable [sic] Tribunal de [Circuito de] Apelaciones del Circuito Regional VII, Carolina-Fajardo (en adelante Tribunal Apelativo) al resolver que la parte demandante acreedora de una sentencia dictada en 1970 podría solicitar un cumplimiento en una acción independiente de [d]años y [p]erjuicios 26 años después.

### Segundo Error

Erró el Tribunal Apelativo al dictar [s]entencia [s]umaria a favor de los demandantes autorizando a ejecutar la sentencia de 1970 e impedir que se presentara la defensa de usucapión o prescripción adquisitiva o inclusive dictar que no hubo interrupción civil y por tanto procedía la defensa alegada.

### Tercer Error

Erró el Honorable [sic] Tribunal de [Circuito de] Apelaciones del Circuito Regional VII, Carolina-Fajardo (en adelante Tribunal Apelativo) al resolver que el Tribunal de Primera Instancia no cometió error ni abuso de su discreción al conceder la Sentencia Parcial objeto de apelación ante ellos.

### Cuarto Error

Erró el Honorable [sic] Tribunal de [Circuito de] Apelaciones VII, Carolina-Fajardo (en adelante Tribunal Apelativo) al conceder como remedio una Sentencia Sumaria a los demandantes-recurridos bajo la situación procesal que se le presentó, la cual no procedía conforme a derecho.

### Quinto Error

Erró el Honorable [sic] Tribunal de [Circuito de] Apelaciones VII, Carolina-Fajardo (en adelante Tribunal Apelativo) al determinar que con los hechos ante sí que [sic] no existía una controversia real sobre los hechos materiales sobre la controversia real de este caso.

El 19 de enero de 2001, expedimos el auto de <u>Certiorari</u> solicitado. La parte peticionaria sometió el asunto mediante su escrito de <u>Certiorari</u>. La parte recurrida presentó su alegato el 8 de junio de 2001.  Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

---

[36] Recurso de <u>Certiorari</u>, pág. 15.

Por estar igualmente dividido el Tribunal y habiéndose expedido previamente el auto solicitado, se dicta sentencia confirmatoria de aquella dictada por el Tribunal de Circuito de Apelaciones.[37]

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.  El Juez Asociado señor Rivera Pérez disintió con opinión escrita, a la cual se unieron los Jueces Asociados señores Hernández Denton y Corrada del Río.  El Juez Asociado señor Rebollo López no intervino.

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina

---

[37] Para poder revocar una sentencia dictada por el Tribunal de Circuito de Apelaciones, se requiere la concurrencia de una mayoría de los Jueces de este Tribunal que intervengan en la consideración del recurso.  Regla 4(a) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, R. 4(a) y Junta Insular de Elecciones v. Corte, 63 D.P.R. 819 (1944).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Alfredo París Giboyeaux
et als

      Recurridos

         v.

                            CC-2000-1032    Certiorari

Flora Ramos

      Peticionaria

Opinión disidente emitida por el Juez Asociado señor Rivera Pérez, a la cual se unen los Jueces Asociados señores Hernández Denton y Corrada del Río.

San Juan, Puerto Rico, a 5 de abril de 2002.

**¿Actuó correctamente el Tribunal de Primera Instancia al autorizar la ejecución de una sentencia dictada en un pleito de división de comunidad, durante la tramitación de un pleito separado sobre daños y perjuicios presentado veintiséis (26) años después de dictarse la sentencia original?  Concluimos que erró el foro de primera instancia.**

**El procedimiento para la ejecución de una sentencia final y firme se encuentra regulado por la Regla 51 de Procedimiento Civil. [38]  Resulta pertinente al asunto ante nuestra consideración lo**

----

[38] 32 L.P.R.A. Ap. III, R. 51.

dispuesto en la Regla 51.1 de Procedimiento Civil, _supra_, la cual dispone lo siguiente:

> La parte a cuyo favor se dicte sentencia, podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de ser firme la misma. Expirado dicho término, podrá ejecutarse la sentencia mediante autorización del tribunal a moción de parte y previa notificación a todas las partes. Si después de registrada la sentencia se suspendiere la ejecución de la misma por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución.

En aquellos casos en que la sentencia ordena a una de las partes realizar un acto específico, la Regla 51.3(a) de Procedimiento Civil, _supra_, dispone lo siguiente:

> (a) Si una sentencia ordenare a una parte transferir el dominio de terrenos y otorgar escrituras y otros documentos, o realizar cualquier otro acto específico, y dicha parte dejare de cumplir dicha orden dentro del término especificado, el tribunal podrá ordenar que el acto se realice por otra persona por él designada, a expensas de la parte que incumple y cuando se haya realizado, tendrá el mismo efecto que si hubiere sido ejecutado por la parte. Si fuere necesario, a solicitud de la parte con derecho al cumplimiento, y previa orden del tribunal, el secretario expedirá además un mandamiento de embargo contra los bienes de la parte que incumple para obligarla al cumplimiento de la sentencia. El tribunal podrá, además, en casos apropiados, procesar a dicha parte por desacato. Asimismo, el tribunal, en lugar de ordenar el traspaso de los mismos, podrá dictar sentencia despojando del título a una parte y transfiriéndolo a otra, y dicha sentencia tendrá el efecto de un traspaso de dominio ejecutado de acuerdo con la ley. Cuando una orden o sentencia dispusiere el traspaso de la posesión, la parte a cuyo favor se registre tendrá derecho a un mandamiento de ejecución previa solicitud al secretario. En todos los casos en que el tribunal ordenare una venta judicial de bienes muebles o inmuebles, dicha orden tendrá la fuerza y efecto de un auto disponiendo la entrega física de la posesión, debiendo consignarse así en el fallo u orden para que el alguacil u otro funcionario actuante proceda a poner al comprador en posesión de la propiedad vendida en el plazo de veinte (20) días desde la venta o subasta, sin perjuicio de los derechos de terceros que no hayan intervenido en el procedimiento.

Las disposiciones estatutarias antes mencionadas han sido interpretadas en varias ocasiones por este Tribunal. Hemos establecido que la parte que obtiene una sentencia a su favor puede ejecutarla sin necesidad de notificar a la parte perdidosa y sin solicitar permiso al tribunal, dentro

de los primeros cinco (5) años de advenir final y firme la misma.[39]  Una vez transcurren los cinco años desde que la sentencia se convierte en final y firme, su ejecución solamente procede con la autorización del tribunal y necesariamente hay que notificar la solicitud a la parte contra la cual se ejecuta la misma para que pueda expresarse al respecto.[40]  Este requerimiento procesal busca evitar que el acreedor por sentencia deje en suspenso la sentencia que tiene a su favor indefinidamente, permitiendo así que el tiempo arroje dudas sobre su validez al momento de ejecutarse.  Una vez transcurren los primeros cinco (5) años desde que la sentencia adviene final y firme, es necesaria la autorización del Tribunal de Primera Instancia para proceder con el procedimiento de ejecución.[41]  En Banco Terr. y Agríc. de P.R. v. Marcial, supra,[42] expresamos lo siguiente:

> El propósito de la ley, según se indica por las secciones 1375 y 1377 del Código de Enjuiciamiento Civil, es que una parte que tiene una sentencia y desea hacerla efectiva por el procedimiento sumario de la corte, debe hacerlo prontamente, y si se duerme sobre sus laureles por cinco años, el tiempo y sus cambios arrojan ciertas dudas sobre la sentencia, o por lo menos sobre el derecho a una ejecución sumaria, y que dicha parte no podrá obtener la ejecución a menos que la corte, basada en hechos probados, esté convencida de que la sentencia no ha sido satisfecha y de que no existe otra razón que impida su ejecución.[43]

Como regla general, una sentencia se debe ejecutar ante el mismo tribunal y dentro del mismo pleito en que se dictó.[44]  Este Tribunal ha reconocido algunas excepciones a esta regla donde, bajo ciertas circunstancias, se puede ejecutar una sentencia por la vía de un pleito independiente. [45]  En todas las ocasiones que se ha permitido la

---

[39] Igaravidez v. Ricci, res. el 4 de noviembre de 1998, 98 T.S.P.R. 146, 147 D.P.R. ___ (1998), 98 J.T.S. 143; Figueroa v. Banco de San Juan, 108 D.P.R. 680 (1979); Avilés Vega v. Torres, 97 D.P.R. 144 (1969).

[40] Íd.

[41] Banco Terr. y Agríc. de P.R. v. Marcial, 44 D.P.R. 129 (1932).

[42] Pág. 132.
[43] People v. Carlin, 191 App. Div. 258.

[44] Igaravidez v. Ricci, supra; J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan: Publicaciones J.T.S., 2000, Tomo II.

[45] Quiñones v. Jiménez Conde, 117 D.P.R. 1 (1986); Padilla v. Vidal, 71 D.P.R. 517 (1950); Tettamanzi et al. v. Zeno, 24 D.P.R. 775 (1917).

interposición de un pleito independiente, a manera de excepción para ejecutar una sentencia, se ha tratado de casos en que la misma imponía como condena el pago de una suma de dinero.[46]  La razón para permitir esta excepción, en esos casos específicamente, es que una vez la sentencia que condena al pago de una suma de dinero adviene final y firme, surge una nueva relación entre las partes de acreedor y deudor por sentencia, distinta de la reclamación original, o sea, surge un nuevo crédito que puede ser reclamado judicialmente.[47]

En el caso de Igaravidez v. Ricci, supra, resolvimos que en un caso donde se dicta sentencia por estipulación de las partes, constituye un contrato de transacción judicial y el incumplimiento de una parte con lo estipulado debe ser exigido mediante el procedimiento de ejecución de sentencia dentro de ese mismo pleito.  Establecimos, además, que en esos casos no es procedente una acción independiente para hacer cumplir los acuerdos estipulados mediante el contrato de transacción judicial.[48]

La sentencia que se pretende ejecutar, dentro del pleito de daños y perjuicios interpuesto por el señor Luis Alfredo París Giboyeaux, fue dictada en el año 1970 en un pleito de división de comunidad de bienes que se ventiló entre sus difuntos padres y la señora Flora Ramos.  En dicha sentencia se recogió el acuerdo estipulado por las partes, cuando aquel pleito comenzaba, el cual le adjudicó a cada parte la parcela de terreno correspondiente a su participación en la comunidad.[49]

Luego de transcurridos veintiséis (26) años de dictarse esa sentencia, la cual no fue recurrida, el aquí peticionario pretende que se ejecute la misma en otra acción sobre daños y perjuicios que se ventila ante una sala distinta del Tribunal de Primera Instancia, de aquella que dictó la sentencia

---

[46]  Íd.

[47]  Rodríguez v. Martínez, 68 D.P.R. 450 (1948).

[48]  Igaravidez v. Ricci, supra.

[49]  El referido acuerdo configuró un contrato de transacción judicial que puso fin al pleito de división de comunidad incoado.  Este hecho fue reconocido por el Tribunal de Primera Instancia en su resolución de 26 de febrero de

original. Como cuestión de hecho, la sentencia que se pretende ejecutar no condena a ninguna de las partes al pago de una suma de dinero en específico, situación particular en la que hemos permitido la ejecución de una sentencia por vía de un pleito independiente. Tampoco existe nada más que adjudicar en torno a los hechos que provocaron la sentencia dictada en el 1970, por lo que el cumplimiento con lo allí estipulado se debe perseguir mediante el mecanismo de ejecución de sentencia dispuesto en la Regla 51 de Procedimiento Civil, _supra_, y dentro del mismo pleito en que ésta se dictó.[50]

Ante estos hechos, y de acuerdo con los fundamentos de derecho expuestos anteriormente, no procedía que el Tribunal de Primera Instancia, Sala Superior de Carolina, ordenara la ejecución de la sentencia en cuestión en el caso de autos. Concluimos, pues, que erró el Tribunal de Circuito de Apelaciones al confirmar dicha actuación del foro de primera instancia.

Por los fundamentos antes expuestos, revocaríamos la sentencia emitida por el Tribunal de Circuito de Apelaciones, así como la sentencia parcial dictada por el Tribunal de Primera Instancia.

Efraín E. Rivera Pérez
Juez Asociado

---

1999, la cual fue notificada a las partes el 9 de marzo del mismo año. Apéndice del recurso de _Certiorari_, págs. 42-47.

[50] _Igaravidez v. Ricci_, _supra_.